FORSYTH EMERGENCY SERVICES, P.A., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7305–76. Filed September 12, 1977.

*Charles Lynch, Jr.,* for the petitioner.
*Gary F. Walker,* for the respondent.

DAWSON, *Judge:* Respondent determined the following deficiencies in petitioner's Federal income taxes based on the disallowance of deductions for amounts contributed to its pension plan:

| Year | Deficiency |
|------|------------|
| 1972 | $16,786.41 |
| 1973 | 20,880.40 |

At issue is whether the actual operation of petitioner's pension plan satisfied the eligibility requirements of section 401(a).[1] If the plan is deemed an improper operation under this section, we must also decide whether it can be cured retroactively by making extra contributions for excluded employees.

FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by reference and are found accordingly.

Petitioner Forsyth Emergency Services, P.A. (FESPA), is a corporation with its principal office in Winston-Salem, N.C., at the time of filing its petition in this case. Petitioner filed its corporate income tax returns for the taxable years 1972 and 1973 on an accrual basis of accounting with the Internal Revenue Service Center, Memphis, Tenn.

FESPA is engaged in emergency medical services and operates the emergency room facilities at Forsyth Memorial Hospital, Winston-Salem, N.C. The corporation was incorporated on January 1, 1970, by three doctors who are petitioner's officers and stockholders. From incorporation through the years in issue, FESPA's officers are President, Joyce H. Reynolds, Vice President, David S. Nelson, and Secretary-Treasurer, George Podgorny, each of whom owns 33⅓ percent of the 600 shares of petitioner's issued and outstanding common stock. FESPA declared a dividend of $20 a share on its common stock in 1972 and $18 a share in 1973.

On December 24, 1970, petitioner executed a pension plan entitled, "Money Purchase Pension Plan for Forsyth Emergency Services, P.A." For a full-time employee to be a participant, the plan requires 9 months of service and a minimum age of 30 years. Specifically, paragraph 1.12 of petitioner's plan provides:

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

1.12 Participant. Each employee in the employment of the Association on any Adjustment Date who shall have attained the age of 30 years and who shall have been continuously employed by the Association for 9 months.

Paragraph 1.2 defines the adjustment date as "The last day of each Fiscal Year of the Plan." Since the plan is on a calendar year basis, any full-time employee meeting the 9-month service requirement and 30th birthday as of December 31 is a participant.

During petitioner's first year of operation, there were four full-time employees working as of December 31, 1970. Three of the full-time employees, Joyce H. Reynolds, David S. Nelson, and George Podgorny, met their 9-month requirement on October 1, 1970, and had already met their age requirements during petitioner's first year of operation. Thus, they qualified for participation under paragraph 1.12 of the plan and received benefits from petitioner's contribution in the first year of operations. A fourth employee, Wilcox, had not met his 9-month service requirement and 30th-birthday requirement under paragraph 1.12 of the plan. He was excluded by the plan from coverage.

On July 28, 1971, FESPA requested that the District Director of Internal Revenue at Greensboro, N.C., issue a determination letter as to whether the plan was qualified under section 401(a). A second letter dated October 8, 1971, was mailed by petitioner with regard to the District Director's inquiry concerning the determination request. In response, the District Director sent petitioner a letter dated October 21, 1971, which stated in material part as follows:

Based on information supplied, we have determined that this plan, with any amendments, as shown above, is qualified under section 401 or 405 of the Internal Revenue Code.

Continued qualification of the plan will depend on its effect in operation as well as its present form. (See section 1.401–1(b)(3) of the Income Tax Regulations.)

During FESPA's second year of operation, 1971, there were five full-time employees working as of December 31, 1971. Three of these full-time employees, Joyce H. Reynolds, David S. Nelson, and George Podgorny, were participants under paragraph 1.12 of the plan and received the benefits of FESPA's contribution under the plan. A fourth employee, Wilcox, had met the 9-month service requirement, but did not

meet the 30th birthday requirement. He still did not qualify for participation under paragraph 1.12 and was excluded from coverage. The fifth full-time employee, Kelly Taylor, began working on September 1, 1971, and had a birthdate of December 13, 1942. Thus, his service requirement and age did not qualify him under paragraph 1.12 and he was excluded from coverage.

During FESPA's third year of operation, 1972, there were six full-time employees working as of December 31, 1972. Three of these full-time employees, Joyce H. Reynolds, David S. Nelson, and George Podgorny, were again participants and contributions were made for them. Wilcox and Wells did not qualify for participation under paragraph 1.12 of the plan because they had not met their age limitation. Wells also had not met his 9-month service requirement. They were excluded from coverage of the plan. The sixth employee, Kelly Taylor, met his 9-month service requirement on June 1, 1972, and met his 30th birthday requirement on December 13, 1972. He was a participant for 1972 under paragraph 1.12 of the plan. FESPA made no contribution for Taylor in its administration of the plan when it made its contribution at the end of the year and filed its 1972 Form 4848, "Annual Status Report," with the Internal Revenue Service.

During petitioner's fourth year of operation, 1973, there were 10 full-time employees working as of December 31, 1973. Three of these full-time employees, Joyce H. Reynolds, David S. Nelson, and George Podgorny, were again allowed coverage by the plan. Wilcox had still not reached the age of 30 and was excluded from participation. Three other employees, Guidetti, Jones, and Johnson, did not qualify for participation under paragraph 1.12 because they had not met their age and service requirements under the plan. They were excluded from coverage. The eighth employee, Kelly Taylor, was allowed participation under the plan, but due to not including this employee's overtime wages in his compensation base, insufficient funds were allocated on his behalf in petitioner's contributions. A ninth employee, Wells, met his service requirement on June 1, 1973. He also met his 30th birthday requirement on July 13, 1973, and was a participant for 1973 under paragraph 1.12 of the plan. A 10th employee, Robbins, met his service requirements on October 1, 1973. He had also

met his 30th birthday requirement by January 1, 1973, and was a participant for 1973 under paragraph 1.12 of the plan. FESPA made no contribution for Wells or Robbins in its administration of the plan when it made its contribution at the end of the year.

A chart indicating the eligibility of FESPA employees under paragraph 1.12 of the plan is as follows:

SUMMARY OF EMPLOYEES' ELIGIBILITY[2] UNDER PARAGRAPH 1.12 OF THE PLAN

| | 1970 | 1971 | 1972 | 1973 |
|---|---|---|---|---|
| *Qualified as participants under plan par. 1.12:* [No contribution by employer] | Reynolds | Reynolds | Reynolds | Reynolds |
| | Nelson | Nelson | Nelson | Nelson |
| | Podgorny | Podgorny | Podgorny | Podgorny |
| | | | [Taylor] | Taylor |
| | | | | [Wells] |
| | | | | [Robbins] |
| *Not defined as participants under plan par. 1.12 and no contribution due to:* | | | | |
| Age and service requirement | Wilcox | Taylor | Wells | Guidetti |
| | | | | Jones |
| | | | | Johnson |
| Age requirement only | | Wilcox | Wilcox | Wilcox |
| Part-time employees | 10 | 15 | 10 | 24 |

For the taxable year 1972, petitioner filed a Form 4848, "Annual Employer's Return for Employees' Pension or Profit-Sharing Plans."

On March 21, 1974, FESPA was informed in writing by the respondent's agent working in the employee plans group that its pension plan was unqualified in operation in 1972. Respondent's letter revoked the outstanding determination letter dated October 21, 1971. In the notice of deficiency dated May 12, 1976, respondent informed FESPA that the plan was also declared unqualified for 1973.

After receiving respondent's revocation letter dated March 21, 1974, petitioner filed its 1973 Form 4848, "Annual Employer's Return for Employees' Pension or Profit-Sharing Plans," showing Wells and Robbins as participants under the plan, although no contribution was made for these persons.

FESPA requested further administrative contact to appeal this determination and to seek advice from respondent toward mitigating their dispute. It was told that nothing could be done until a second agent examining the corporate returns had issued his final determination. That determination

---

[2] Variances between this schedule and Form 4848 reflect persons who were not present on Dec. 31.

disqualifying FESPA's plan for the years 1972 and 1973 was issued on June 30, 1975.

In August of 1975, petitioner's attorney advised the District Director's office that petitioner had adjusted its books and records by "allocating the contributions already made for 1972 and 1973 to all participants in proportion to their covered compensation," so as to include those eligible persons who were excluded from the plan during its operation prior to respondent's adverse determination. The attorney also stated that, "in addition, the employer FESPA had made a contribution to bring the total contribution for these 2 years up to the correct amount plus an amount for interest to compensate for any earnings during the period of omission." These subsequent reallocations and additional contributions were paid by Dr. Podgorny on behalf of FESPA on August 22, 1975, in the amount of $15,044.24 and are summarized in the table on p. 887.

During the years in issue, it was the responsibility of Dr. Podgorny as secretary-treasurer of FESPA to familiarize himself with FESPA's pension plan and to report the names of the employees covered by that plan to FESPA's accountant. The accountant would then inform the plan's trustee of the pertinent information necessary to administer the trust.

The year 1972 was the first year that any interpretation of the plan was necessary to determine qualifying participants, considering both age and service. In reporting those names Dr. Podgorny failed to report that Taylor was covered by the plan for 1972 and that Wells and Robbins were covered by the plan in 1973. The error was not a result of bookkeeping but, rather, resulted from a misreading of paragraph 1.2 of the plan, the adjustment date. Based on advice secured from legal counsel, his accountant, and two advisors at the Wachovia Bank, petitioner applied this paragraph as if it read the first day of each fiscal year of the plan. This result occurred because, when combined with the definition of participant in paragraph 1.12, Dr. Podgorny thought that when eligibility was attained during the year, an employee became a participant the beginning of the next year.

Thus, although Taylor was eligible on December 31, 1972, under paragraph 1.2 of the plan, FESPA excluded him from the plan for 1972 because he was not eligible on the first day

SUMMARY OF CONTRIBUTIONS

Administration of plan in actual operation

| Employees | Qualifying salary | Included in contribution | Reason excluded | Contribution allocation | Subsequent contribution reallocation | Subsequent additional contribution |
|---|---|---|---|---|---|---|
| | | | *1972* | | | |
| Reynolds | $68,300 | Yes | | $12,660 | $11,763 | $897 |
| Nelson | 68,300 | Yes | | 12,660 | 11,763 | 897 |
| Podgorny | 68,300 | Yes | | 12,660 | 11,763 | 897 |
| Taylor | 14,480 | No | | (¹) | 2,691 | 205 |
| Wells | | No | Age | | | |
| Wilcox | | No | Age | | | |
| 10 Part-time employees | | No | Part time | | | |
| | | | | $37,980 | $37,980 | $2,896 |
| | | | *1973* | | | |
| Reynolds | $68,500 | Yes | | $13,700 | $10,979 | $2,721 |
| Nelson | 68,500 | Yes | | 13,700 | 10,979 | 2,721 |
| Podgorny | 68,500 | Yes | | 13,700 | 10,979 | 2,721 |
| Taylor | 14,668 | Yes | | ²2,400 | 2,351 | 582 |
| Wells | 15,224 | No | | (¹) | 2,441 | 604 |
| Robbins | 36,000 | No | | (¹) | 5,771 | 1,429 |
| Guidetti | | No | Service | | | |
| Jones | | No | Service | | | |
| Johnson | | No | Service | | | |
| Wilcox | | No | Age | | | |
| 24 Part-time employees | | No | Part time | | | |
| | | | | $43,500 | $43,500 | $10,778 |

¹ Defined as participant under par. 1.12 of the plan.

² Contribution should have been $2,934—overtime wages were not included in compensation base.

of that year. And, although Wells and Robbins were eligible on December 31, 1973, under paragraph 1.2 of the plan, FESPA excluded them from the plan in 1973 because they were not eligible on the first day of that year.

Section 404(a)(3) permits a deduction for contributions to a pension plan trust if the trust is exempt from taxation under section 501(a), and that exemption is contingent upon whether the plan is qualified within the requirements of section 401(a). Thus, the first issue we must decide is whether petitioner's pension plan satisfied in 1972 and 1973 the requirements set forth in section 401(a).

Respondent's position is that the petitioner's pension plan does not cover enough of the petitioner's six to ten employees to satisfy the percentage requirements of section 401(a)(3)(A), and that the plan does not satisfy the nondiscriminatory requirements of sections 401(a)(3)(B) and 401(a)(4), because in operation the plan discriminated in favor of the petitioner's employees who are officers, shareholders, and highly compensated employees.

We agree with respondent that petitioner's plan does not meet the coverage requirements of section 401(a)(3)(A). To constitute a qualified plan this section provides for an automatic percentage test, as follows (sec. 401(a)):

(a) REQUIREMENTS FOR QUALIFICATION.—
* * *
(3) if the trust, or two or more trusts, or the trust or trusts and annuity plan or plans are designated by the employer as constituting parts of a plan intended to qualify under this subsection which benefits * * *
(A) 70 percent or more of all the employees, or 80 percent or more of all the employees who are eligible to benefit under the plan if 70 percent or more of all the employees are eligible to benefit under the plan, excluding in each case employees who have been employed not more than a minimum period prescribed by the plan, not exceeding 5 years, employees whose customary employment is for not more than 20 hours in any one week, and employees whose customary employment is for not more than 5 months in any calendar year, * * *

The calculation of the 70-percent test involves the total number of employees, or everyone who works there, minus statutory exclusions to arrive at the term "all employees"

under the statute. See sec. 1.401–3, Income Tax Regs.[3] Because Wells is a statutory exclusion in 1972, the base number for percentage computation is five.[4] Since three employees were actually covered, petitioner's plan falls short of 70 percent. Similarly, in 1973, three of ten employees are statutorily excluded, which provides coverage for four out of seven employees, or less than the specified "70 percent or more of all the employees" requirement under this subsection.

Nor does the plan satisfy the "80 percent of 70 percent" requirement under section 401(a)(3)(A). The crucial second step of this two-phase process focuses on employees eligible under the plan's requirements without regard to statutory exclusions. First, a determination for the percentage of "eligible" to "all" employees should be made to compute the 70-percent test. Then a percentage of "covered" to "eligible" employees must be ascertained to satisfy the 80-percent requirement.

In 1972 Wells is statutorily excluded from the total number of employees due to his lack of service requirement, placing the "all" employee figure at five. Because Wilcox is excluded under the plan for age, the "eligible" employee figure is set at four, providing a four-to-five ratio within the first-step 70-percent test. Using the same reasoning for 1973, there is a six-to-seven ratio, also within the 70-percent guidelines.

The computations for the 80-percent second step determination, however, indicate an insufficient percentage of "covered" to "eligible" employees. The three-to-four and four-to-six ratios for 1972 and 1973, respectively, do not meet the 80 percent requirement, and, therefore, the plan provides inadequate coverage under either test to be qualified under section 401(a)(3)(A).[5]

---

[3] See also sec. 11.410(b)–1(e), 40 Fed. Reg. 45844, (1975).

[4] Petitioner asserts on brief that another employee, Wilcox, is also excluded due to age. Although this factor does exclude him from participating under the plan, this requirement is a self-imposed limitation by the corporation and is not statutorily recognized. The same reasoning applies to the correct computation for 1973.

[5] In the alternative a plan may qualify with respect to coverage under sec. 401(a)(3)(B). However, respondent determined in his statutory notice of deficiency that the deductions for the plan are not permitted. Thus, the Secretary's delegate has not made the finding required by sec. 401(a)(3)(B) that the plan is nondiscriminatory. Further, there is no assertion by petitioner that respondent was arbitrary and capricious in exercising his discretion. As a result, petitioner's plan is not qualified under sec. 401(a)(3).

Respondent further contends that, in addition to not meeting the section 401(a)(3)(B) requirements, petitioner's plan fails to meet the alternative nondiscriminatory requirements with respect to its contributions or benefits under section 401(a)(4).[6] See secs. 1.401–3(b) and 1.401–4(a)(1)(i), Income Tax Regs.; *Loevsky v. Commissioner,* 55 T.C. 1144, 1149 (1971), affd. 471 F.2d 1178 (3d Cir. 1973).

The two Code provisions are explained in *Babst Services, Inc. v. Commissioner,* 67 T.C. 131, 136 (1976):

Section 401(a)(3)(B) deals with *coverage,* and in effect conditions qualification of the plan upon a *finding* by the Secretary or his delegate that the classification of employees eligible to participate in the plan is not discriminatory in favor of the prohibited group. Section 401(a)(4), on the other hand, is concerned with the *functioning* of the plan, and it in substance makes qualification turn upon whether "the contribution or benefits provided under the plan do not discriminate in favor of" the prohibited group.

In deciding whether the contributions and benefits were discriminatory, again all the facts and circumstances of the operation of petitioner's plan must be considered to determine whether the plan was operated for a "fair cross section" of all employees in general, rather than for those employees in the category of the prohibited group. Sec. 1.401–4(a)(2)(iii), Income Tax Regs.

Respondent cites *Peter F. Mitchell Corp. v. Commissioner,* T.C. Memo. 1968–209, which states:

Congress enacted the provisions of section 401(a)(4) "In order to insure that stock bonuses, pension, or profit-sharing plans are operated for the welfare of employees in general, and to prevent the trust device from being used for the benefit of the shareholders, officials, or highly paid employees." H. Rept. No. 2333, 77th Cong., 2d Sess., 1942–2 C.B. 372, 450.

Respondent then concludes that the benefits and contributions received by the high percentage of highly compensated employees were discriminatory under section 401(a)(4).

We agree that petitioner's plan was operated in a discriminatory manner. It is true that the plan is a defined percentage benefit plan without regard to weighted years of service or

---

[6] Sec. 401(a)(4) provides:

(4) if the contributions or benefits provided under the plan do not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees.

forfeiture of benefits, but the exclusion in 1972 of one eligible low compensation employee, Taylor, resulted in coverage only for the high compensation group. Despite Taylor's inclusion in 1973, one low and one middle compensation employee were omitted, thus tipping the coverage scales to imbalance in favor of the prohibited group. The plan, therefore, was not operating for a fair cross section of all the employees in general.

Thus, the central issue in this case turns upon whether retroactive relief should be granted for the misinterpretation of the adjustment date. The availability of this type of correction, if successfully pursued, obliterates past coverage difficulties which, in turn, obviates discussion of claims of discrimination. Unfortunately, we find no support for retroactive cure in this case in the Code, regulations, or case law.

Section 401(b) authorizes a taxpayer to retroactively correct a disqualifying provision[7] on the face of a plan.[8] FESPA is thus precluded from relief under this provision since its defect was one of operation and not form. It is to this method that the court in *Myron v. United States,* 382 F.Supp. 590 (C.D. Cal. 1974), affd. 550 F.2d 1145 (9th Cir. 1977), was referring when it denied retroactive relief for a profit-sharing plan. The court noted that:

plaintiff is attempting to elevate form over substance. * * * There was a benefit enjoyed by not covering those employees—unfortunately for them, however, it inured only to Myron and her sole-owned corporations. [*Myron v. United States, supra* at 598.]

Petitioner argues that the operation of its plan in variance with its terms should be viewed as harmless error, rather than a fatal error causing its plan to be disqualified. There is no allowance in section 401(a) for an excuse to be offered to neutralize the effect of the objectionable operation, irrespective of whether the cause resulted from an honest mistake, inadvertence, erroneous advice of counsel, or intentional misdirection. See *Myron v. United States, supra.*

Nor can petitioner obtain relief under applicable case law for the simple reason that those cases permitting retroactive cure were not discriminatory in operation. To the contrary,

---

[7] See definition contained in sec. 1.401(b)–1(b), Income Tax Regs.

[8] See general rule in sec. 1.401(b)–1(a), Income Tax Regs.

petitioner maintains that *Myron v. United States, supra,* leaves the door ajar on the degree of discrimination to permit courts to decide how wide to open it on the degree of mistake that would be tolerated in allowing retroactive corrections. Petitioner further cites *Aero Rental v. Commissioner,* 64 T.C. 331 (1975), as support for permitting retroactive cure for harmless error.

With respect to the discretion petitioner claims courts have to grant retroactive relief, this Court would like to stress that the lines of demarcation for deciding whether to grant this type of cure are well defined when concerned with operational rather than form disqualification. Relief was granted in *Aero Rental* when we decided that the taxpayer had timely amended "the objectionable provisions, and no one benefited by reason of the temporary existence of those provisions." *Aero Rental v. Commissioner, supra* at 342. See also *Mendenhall Corp. v. Commissioner,* 68 T.C. 676 (1977). A deciding factor that cannot be ignored is that the objectionable provisions were on the face of the plan and were not involved in the operation of the plan. Unlike the instant case, the plan in *Aero Rental* was not discriminatory in operation. This crucial difference was expressly noted in the concurring opinion as being persuasive for the majority result. The same conviction was reiterated in the concurring opinion of *Myron.*

Petitioner also cites *Ray Cleaners Inc. v. Commissioner,* T.C. Memo. 1968-6, as support for retroactive cure. In that case the taxpayer failed to invite several employees to be plan participants in one of the years in issue. The holding results from a finding that the plan was nondiscriminatory with respect to those employees covered by the plan (before considering the effect of the excluded employees). The opinion is based on this distinguishing factor:

While only three employees were participants, four others were invited to participate and declined to do so. * * * It follows that only one of the three participants was in the prohibited group. We do not think this renders the plan discriminatory in operation. Finally, it is true that in 1964, petitioner inadvertantly failed to invite three eligible employees to participate. We do not think, however, that an inadvertent omission disqualifies a plan.

Although there is language to the effect that inadvertent omission will not disqualify a plan, it is written in the context based upon the narrow confines of a finding that this plan did not violate section 401(a), irrespective of its objectionable

operation. This was due to the fact that the plan was properly operated prior to the error, that the eligible employees had been initially offered coverage, and that employees who were participants included those not in the prohibited group—all facts not applicable to the instant case. That holding, however, is not a blanket suggestion that operational violation of section 401(a) may be excused on grounds of inadvertent omission and we expressly reject such a broad interpretation.

Petitioner's administrative mistakes are analogous to the discriminatory operation of the plan in *Myron v. United States, supra.* Both taxpayers argued justifiable excuse for the disqualification in operation because those defects derived from honest mistakes. In countering that contention, the Court of Appeals for the Ninth Circuit said:

> While it might seem harsh to deny retroactive qualification of any plan where a claim of innocence has been accepted, this Court is not prepared to say that consideration of the degree of failure, even innocent failure in coverage is an improper basis for denying qualification.
>
> The Commission has not and need not set any inflexible standard for determining the degree of inadvertent error required for disqualification. * * * [*Myron v. United States*, 550 F2d 1145, 1146 (9th Cir. 1977.]

Moreover, the concurring opinion by Judge Sneed distinguished *Ray Cleaners* from *Myron* on the same ground *Ray Cleaners* is not applicable here—because the pension plan was discriminatory in operation.

Petitioner has attempted to distinguish its case on the basis that its plan, unlike the one in *Myron,* operated properly during its first 2 years of operation. That position is without legal significance, for as stated in *Central Motor Co. v. United States,* an unreported case (D. N.M. 1976, 37 AFTR 2d 76–1001, 76–1003, 76–1 USTC par. 9245, p. 83,524):

> A plan declared qualified by the Commissioner at its inception may lose its qualification if it is administered or operated in a way that violates the fundamental purpose of section 401. * * * (Citations omitted.)

The fact that a plan discriminated in operation was decisive in denying retroactive relief in *Quality Brands, Inc. v. Commissioner,* 67 T.C. 167, 175 (1976). There this Court stressed:

> petitioners suggest that they are willing to reconstruct the accounts * * * to eliminate the prohibited discrimination * * * They argue that such actions

should be given retroactive effect, and they claim that *Aero Rental,* 64 T.C. 331 (1975), supports their position. However, this situation is altogether different from that in *Aero Rental,* in which there had been no discrimination in the operation of the plan * * * *here, the plans have been operated in a manner so as to discriminate in favor of a prohibited group. Under these circumstances, there is no authority for permitting the petitioners to change retroactively what has been done in order to qualify the plan.* See also *Myron v. United States, supra;* cf. sec. 401(b). [Emphasis added.]

Petitioner seeks to distinguish *Quality Brands* from its case on factual grounds that are immaterial to the outcome. In both cases the discriminatory effect resulted from improper operation of the plan, and it is immaterial that the causes to that end differed as a result of discretionary, as opposed to nondiscretionary, acts. Denial of retroactive cure applies to both acts, as the holding in *Quality Brands* indicates.

Petitioner also cites *Time Oil Co. v. Commissioner,* 258 F.2d 237 (9th Cir. 1958), remanded 26 T.C. 1061 (1956), for the proposition that operational variances can be deemed too "slight" to disqualify the plan, based on whether those variances prejudiced the benefits to be received by the beneficiaries and improved the benefits to the employer. The issue in *Time Oil* was whether the plan was operated for other than the exclusive benefit of its employees.

We agree with respondent that *Time Oil* was based on different issues of fact and results and, therefore, is not the proper criterion to apply in determining if petitioner's plan satisfies the percentage and nondiscriminatory requirements of section 401(a). There is no authority in that case to justify retroactive cure for inadvertence. Furthermore, in *Wisconsin Nipple & Fabricating Corp. v. Commissioner,* 67 T.C. 490, 498 (1976), when distinguishing *Time Oil,* we reiterated the criterion of improper operation on which cases turn:

In *Time Oil Co. v. Commissioner,* * * * also relied upon by the petitioner, it was found that the profit-sharing plan was not disqualified because of its operation. Here, such a finding has not been made. [Citations omitted.]

Accordingly, we hold that petitioner's plan did not fulfill the eligibility requirements under section 401(a)(3). Because the plan operated improperly, petitioner is not permitted to cure that discriminatory operation retroactively for the years 1972 and 1973. See and compare *Ludden v. Commissioner,* 68 T.C. 826 (1977).

In view of concessions made by the parties and our conclusions on the disputed issues,

*Decision will be entered under Rule 155.*

---

[1] All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue.