**ORTHOPAEDIC ASSOCIATES, P. C.; Orthopaedic Associates, P. D. Money Purchase Pension Plan; and Orthopaedic Associates, P. C. Profit Sharing Plan**

v.

**UNITED STATES of America.**

Civ. No. 1–78–232.

United States District Court, E. D. Tennessee, S. D.

Feb. 8, 1980.

Spears, Moore, Rebman & Williams, Chattanooga, Tenn., Swafford & Mitchell, Chattanooga, Tenn., for plaintiffs.

Joe Vaulx Crockett, III, Tax Division, Dept. of Justice, Washington, D. C., John H. Cary, U. S. Atty., Knoxville, Tenn., for defendant.

## MEMORANDUM

FRANK W. WILSON, Chief Judge.

This is an action for the refund of federal taxes. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1346 and is not in dispute. The case is presently before the Court upon the motion of the defendant for summary judgment.

The following facts have been stipulated by the parties. Orthopaedic Associates, P. C., is a professional corporation for the practice of medicine organized and existing under the laws of the State of Tennessee and having its principal offices in Chattanooga, Tennessee. At all times relevant to the issues in this lawsuit the stock of the corporation was owned in equal parts by Dr. C. Robert Clark and Dr. H. Barrett Heywood. Effective as of August 30, 1970, the corporation adopted a Money Purchase Pension Plan and a Profit Sharing Plan. The fiscal years for each plan ended upon August 31 of each year. The corporation's fiscal year ended upon January 31 of each year. As originally adopted both plans provided that an employee have six months of service with the corporation and be at least 30 years of age in order to be eligible to participate. A formal request for a determination that the plans were qualified for tax-exempt status under sections 401(a) and 501(a) of the Internal Revenue Code was filed with the Internal Revenue Service on December 4, 1972.

Before final action on the request had been taken, a representative of the Internal Revenue Service recommended that both plans be amended to reduce the eligibility requirement relating to age from age 30 to age 22. The plans were amended accordingly on April 13, 1973, and the amendments were made retroactive so as to cover each prior year of the plans' existence. Both plans were funded for all years and for all employees who would then be eligible to participate by reason of the reduced age requirement. This amendment was entered into before the corporate tax return was due for the year ending January 31, 1973, and made the only change requested by the Internal Revenue Service.

The employees of the corporation participating in the plans prior to the April, 1973, amendments were as follows:

Employer Taxable Year Ending
1-31-72

| Employee | Position | Annual Salary |
|---|---|---|
| Dr. Robert Clark | Physician | $100,000.00 |
| Dr. H. Barrett Heywood | Physician | $100,000.00 |
| Rawlston, B. B. | Clerical | 6,519.00 |
| Saylor, F. L. | Clerical | 3,794.00 |

Employer Taxable Year Ending
1-31-73

| Dr. Robert Clark | Physician | $108,500.00 |
| Dr. H. Barrett Heywood | Physician | $108,500.00 |
| Saylor, F. L. | Clerical | 5,667.00 |

The following is an analysis of the participating employees both before and after the April 13, 1973 amendments:

Prior to Amendment:

| | 8-30-70 | 1-31-71 | 1-31-72 | 1-31-73 |
|---|---|---|---|---|
| Total employees | 6 | 9 | 8 | 11 |
| Excluded for Service | 0 | 3 | 2 | 5 |
| Balance | 6 | 6 | 6 | 6 |
| Ineligible for Age | 0 | 0 | 2 | 3 |
| Total Participants | 6 | 6 | 4 | 3 |
| Participants who are Stockholders | 2 | 2 | 2 | 2 |

After Amendment:

| | 8-30-70 | 1-31-71 | 1-31-72 | 1-31-73 |
|---|---|---|---|---|
| Total employees | 6 | 9 | 8 | 11 |
| Excluded for Service | 0 | 3 | 0 | 5 |
| Balance | 6 | 6 | 8 | 6 |
| Ineligible for Age | 0 | 0 | 0 | 0 |
| Total Participants | 6 | 6 | 8 | 6 |
| Participants who are Stockholders | 2 | 2 | 2 | 2 |

As reflected in the above table, for the year ending January 31, 1972, four of the eight employees of the corporation were covered by the two plans. Of the other four employees, two were excluded because of length of service and two because of age. In the year ending January 31, 1973, only three of eleven employees participated.

Five were excluded because of length of service and three because of age. The parties agree that the decrease in the number of participating employees in the non-prohibited group under the plans as originally written resulted from a turnover in the rank and file employees, which in turn led to the hiring of new employees who were not qualified because of their age and/or their service. The parties further stipulate that Drs. Clark and Heywood are highly paid officers and stockholder employees employed as physicians, and that the other participants in the plans fairly represent the remaining employees of the corporation as participants in the Plans.

On June 4, 1973 the Service ruled that the Plans were qualified for the fiscal year ending January 31, 1971, but that they were not qualified for the years ending January 31, 1972 and January 31, 1973. The Service found, and the plaintiffs do not here protest, that the Plans did not meet the percentage requirements of section 401(a)(3)(A). The Service further found that the Plans were not qualified for fiscal years 1972 and 1973 because they discriminated "in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees . . .." 26 U.S.C. § 401(a)(3)(B). The Internal Revenue Service further ruled that the amendments made on April 13, 1973, lowering the age requirement from age 30 to age 22 were not effective for the corporation's year ending January 31, 1973, or for any years prior thereto.

As a result of the foregoing rulings, the following additional taxes were assessed and paid and their refund is sought in this litigation:

| 1/31/72 | Orthopaedic Associates, P. C. | $3,478.00 | |
| 1/31/73 | Orthopaedic Associates, P. C. | 796.00 | |
| | Sub Total | | $4,264.00 |
| 8/31/72 | Orthopaedic Associates, P. C. Money Purchase Pension Plan | 159.64 | |
| 8/31/73 | Orthopaedic Associates, P. C. Money Purchase Pension Plan | 460.37 | |
| | Sub Total | | 620.01 |
| 8/31/72 | Orthopaedic Associates. P. C. Profit Sharing Plan | 536.35 | |
| 8/31/73 | Orthopaedic Associates, P. C. Profit Sharing Plan | 388.69 | |
| | Sub Total | | 926.04 |
| | TOTAL | | $5,810.05 |

On the basis of the foregoing record the plaintiffs contend that the Secretary's finding that the plans discriminated in favor of a prohibited group in the years 1972 and 1973 was an abuse of discretion and should accordingly be set aside. The plaintiffs further contend that the Secretary was in error in disallowing the retroactive amendment of the plans. The Government, upon the other hand, contends that preferential tax treatment of the plans was properly denied for each of the years in issue as the Secretary properly found that the plans discriminated in favor of the principal stockholders and most highly paid employees. The Government further contends that the retroactive amendment of the plans was neither timely nor permissible.

For the years in issue, section 401(a)(3) of the code, which sets forth the coverage requirements for qualification for pension and profit-sharing plans, provided as follows:

"Sec. 401. QUALIFIED PENSION, PROFIT–SHARING, AND STOCK BONUS PLANS. (a) *Requirements for Qualification*. A trust . . . forming part of a . . ., pension, or profit-sharing plan of an employer . . . shall constitute a qualified trust under this section—

\* \* \* \* \* \*

(3) if the trust, . . . benefits either—

(A) 70 per cent or more of all the employees, or 80 per cent or more of all the employees who are eligible to benefit under the plan if 70 per cent or more of all the employees are eligible to benefit under the plan, . . ., or

(B) such employees as qualify under a classification set up by the employer and found by the Secretary or his

delegate not to be discriminatory in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees; . . ."

In order for the plans in question to be qualified under section 401 as it existed in the years 1972 and 1973, they must have met one of the two requirements set forth in subparagraphs A or B above. Section 401(a)(3)(A) requires the plan to benefit 70 per cent or more of all employees, or 80 per cent or more of all employees who were eligible to benefit under the plan, provided that 70 per cent or more of all employees were eligible. It is unnecessary here to discuss the permissible exclusions from this formula as listed in section 401(a)(3)(A) but omitted in the above recitation of the statute as the exclusions are inapplicable under the undisputed facts in this case. As reflected in the employee tables hereinabove set forth, the plans did not meet the 70 per cent test prior to the April 1973 plan amendments. In the year 1972 the plans covered only four out of the six eligible employees, or 66⅔ per cent of the eligible participants. For the year 1973 the plans covered only three out of six eligible employees, or 50 per cent of the eligible participants. Accordingly, prior to their amendment the plans failed each of the years 1972 and 1973 to meet the percentage tests set forth in section 401(a)(3)(A).

Although the plans did not meet the percentage requirements of section 401(a)(3)(A), they may still have qualified if they met the non-discriminatory requirements of section 401(a)(3)(B). For the years here in issue this subparagraph stated that a plan may qualify provided that the Secretary or his delegate determines that the plan did not discriminate in favor of employees who were officers, stockholders, supervisory personnel or highly compensated employees. As stated above, it is undisputed in this case that the Secretary or his delegate did find that the subject plans discriminated in favor of the two doctors who were the sole stockholders in the corporation and the highest paid employees.

This determination may not be set aside unless it is found to be unreasonable, arbitrary or an abuse of discretion. *Loevsky v. Commissioner*, 55 T.C. 1144 (1971), aff'd 471 F.2d 1178 (3rd Cir. 1973), *cert. denied* 412 U.S. 919, 93 S.Ct. 2733, 37 L.Ed.2d 145 (1973); *Babst Services, Inc. v. Commissioner*, 67 T.C. 131, 138 (1976).

■ No clear test exists for the determination of whether a pension or profit-sharing plan discriminates in favor of employees in the prohibited classification. The statute merely provides that the Secretary or his delegate must find the plan "not to be discriminatory in favor of [the prohibited class]." The Secretary found that the plans were discriminatory in favor of the prohibited class of employees (Drs. Clark and Heywood) pursuant to section 401(a)(3)(B). This determination is not irrebuttable, but the plaintiffs bear a heavy burden in attempting to overturn it. *Container Service Co. v. United States*, 478 F.2d 770, 771 (6th Cir. 1973); *Loevsky v. Commissioner*, 471 F.2d 1178 (3rd Cir. 1973); *Cornell Young Co. v. United States*, 469 F.2d 1318 (5th Cir. 1972).

The defendant insists that the Secretary was justified in determining that the plans were not qualified under section 401(a)(3)(B) because during the first year in issue, the 1972 fiscal year, one-half of the participating employees were members of the prohibited group, and during the fiscal year 1973, two-thirds of the participating employees were members of the prohibited group. In further support of the Secretary's finding of discrimination, the defendant points out that the number of participants in the plans during those years, and prior to the retroactive amendments, was 50 per cent or less of the total number of employees. The plans, so the defendant contends, therefore did not "operate for a fair cross section of all employees in general". *Forsyth Emergency Services, Inc. v. Commissioner*, 68 T.C. 881, 890 (1977).

■ Under the undisputed facts in the case the Court is of the opinion that it cannot say that the Secretary's finding that the plans so operated in 1972 and 1973 as to discriminate in favor of Drs. Clark and

Heywood was unreasonable, arbitrary or capricious. As reflected in the record, the number of participants in the plans prior to the retroactive amendments *was* 50 per cent or less of the total number of employees in each of the years 1972 and 1973. Of those participating, the majority, one-half in 1972 and two-thirds in 1973, *were* members of the prohibited group. The Court is accordingly of the opinion that it cannot say that the plans "operated for a fair cross section of all employees in general, rather than for those employees in the category of the prohibited group". *Forsyth Emergency Services, Inc. v. Commissioner, supra.*

Turning to the contentions of the parties with respect to the retroactive amendment of the pension and profit-sharing plans, the following sequence of relevant events will be recalled. The plans were initially adopted upon August 30, 1970. The taxable year of the employing corporation ended upon January 31. The formal request for approval of the plans for tax exempt status was made upon December 4, 1972. Following the recommendation of the Internal Revenue Service regarding the reduction of the age requirement for eligibility, the recommended amendment was adopted and each plan was funded accordingly retroactive to the inception of the plans, this amendment having been accomplished upon April 13, 1973.

At the time of the foregoing amendment, section 401(b) of Title 26 U.S.C. contained the following provision relating to such changes:

"(b) *Certain retrospective changes in plan.* A stock bonus, pension, profit-sharing, or annuity plan shall be considered as satisfying the requirements of paragraphs (3) . . . of subsection (a) for the period beginning with the date on which it was put into effect and ending with the 15th day of the third month following the close of the taxable year of the employer in which the plan was put in effect, if all provisions of the plan which are necessary to satisfy such requirements are in effect by the end of such period and have been made effective for all purposes with respect to the whole of such period."

As noted in the foregoing statute, a retroactive amendment of the plan to be effective under the statute must be put into effect by "the 15th day of the third month following the close of the taxable year of the employer in which the plan was put in effect". In the present case, the plans were put into effect on August 30, 1970. The close of the taxable year in which the plan was put into effect by the employer would therefore have been January 31, 1971. In order to have effectually amended the plans retroactively pursuant to the foregoing statute, the amendments must have been made by April 15, 1971. As stipulated, however, the pension and profit-sharing plans were not amended until April 13, 1973.

The plaintiff seeks to avoid the foregoing conclusion by reference to the decision in *Aero Rental v. Commissioner*, 64 T.C. 331 (1975) wherein the tax court concluded that section 401(b) relating to retroactive changes in plans were not exclusive, but rather was intended merely as a "safe harbor" provision. The tax court there concluded that "compelling reasons" existed under the particular facts in the case for allowing retroactive amendments to a stock bonus plan apart from the express provisions of section 401(a). This conclusion was predicated upon the reasoning that (1) in enacting the predecessor to section 401(a) Congress overlooked the circumstance that more time than was allowed in the statute might be required to obtain an IRS determination and to work out the necessary amendments of a plan, and (2) the Commissioner's refusal to reconsider his ruling disallowing retroactive effect to an amendment was contrary to Congressional intent as expressed in the subsequent amendment of section 401(a) by the 1974 enactment of ERISA.

It should be noted that subsequent tax court cases have largely, if not wholly, confined the rule with regard to retroactive cure announced in *Aero Rental v. Commissioner* to the facts of that case. That is to say, they have confined the rule to the circumstance where the objectionable provision inadvertently appeared on the face of

the plan and the tax payer was diligent in seeking its removal. *Quality Brands, Inc. v. Commissioner*, 67 T.C. 167 (1977); *Forsyth Emergency Services v. Commissioner*, 68 T.C. 881 (1977). *See also, Myron v. United States*, 550 F.2d 1145 (9th Cir. 1977). The rule laid down in each of the latter cited cases is that where discrimination in favor of a prohibited group is found to have resulted from the operation of a plan, as distinguished from a disqualifying provision on the face of the plan, no provision exists for the retroactive cure of the discrimination.

In the present case the 30-year minimum age requirement in the original plans was not discriminatory on its face. Rather, the Secretary determined that the plans were non-discriminatory in the first year of operation but operated to favor the prohibited groups the second and third years the plans were in effect. The Court is unable to find either statutory or case authority for overruling the Secretary's determination that the operational failure during the second and third years the plans were in effect was not subject to retroactive cure.

An order will accordingly enter dismissing this lawsuit.