**Mildred GREENHALGH, Estate of Gilbert Morse, Plaintiff,**

**Lucius Arnold, Plaintiff–Appellant,**

v.

**PUTNAM SAVINGS BANK; Putnam Savings Bank Defined Benefit Pension Plan And Trust, Defendants–Appellees.**

**Docket No. 97–7551.**

United States Court of Appeals, Second Circuit.

Argued Nov. 4, 1997.

Decided April 1, 1998.

David S. Rintoul, West Hartford, CT (Rosenblatt, Rintoul & Rintoul, West Hartford, CT, of counsel), for Plaintiff–Appellant.

Eric D. Daniels, Hartford, CT (Bruce B. Barth, Jean E. Tomasco, Robinson & Cole LLP, Hartford, CT, of counsel), for Defendants–Appellees.

Before: OAKES and PARKER, Circuit Judges and RAGGI,* District Judge.

PARKER, Circuit Judge:

Appellant Lucius Arnold ("Arnold") appeals from the judgment of the United States District Court for the District of Connecticut (Janet Bond Arterton, Judge) entered March 31, 1997 granting summary judgment in favor of appellees Putnam Savings Bank ("Putnam") and Putnam Savings Bank Defined Benefit Pension Plan and Trust ("Putnam Plan" or "Plan"). The district court, in granting summary judgment, held that appellees did not violate the Employee and Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* (1997), by disregarding income earned by Arnold between the ages of sixty and sixty-five in initially calculating his pension benefit. The single question presented for our review is whether Putnam and the Putnam Plan were in operational compliance with Section 204(b)(1)(H) of ERISA when they calculated Arnold's pension benefits.

## I. BACKGROUND

### A. *Amendment of ERISA*

Effective January 1, 1988, the Omnibus Budget Reconciliation Act of 1986 amended Section 204(b)(1)(H)(i) of ERISA, 29 U.S.C. § 1054(b)(1)(H)(i) to provide:

> a defined benefit plan shall be treated as not satisfying the requirements of this paragraph if, under the plan, an employee's benefit accrual is ceased, or the rate of an employee's benefit accrual is reduced, because of the attainment of any age.

Pub.L. No. 99–509, §§ 9201–9204, 100 Stat. 1973–80 (1986)("OBRA 1986"). Corresponding provisions were added to the Internal Revenue Code ("I.R.C."), codified at I.R.C. § 411(b)(1)(H)(1986). Section 204 of ERISA states that its provisions shall apply in accordance with the regulations of the Secretary of the Treasury.[1]

1. ERISA § 204(b)(1)(H) and I.R.C. § 411(b)(1)(H) are identical. ERISA § 204 provides that regulations issued by the Internal Revenue Service ("IRS") regarding I.R.C.

While the OBRA amendment to ERISA was passed in 1986 and effective January 1, 1988, employers were given until the end of the first plan year beginning after December 31, 1993 to bring their plan documents into compliance.[2] *See* Rev. Proc. 89–65, 1989–2 C.B. 786, § 3.01; I.R.S. Notice 92–36, 1992–2 C.B. 36. Before the plan documents had to be amended but after OBRA 1986 was effective, termed the "remedial amendment period," employers were required to be in operational compliance with the new law. Rev. Proc. 89–65, § 3.05. Specifically, OBRA 1986 states that amendment of the plan documents need not be done before the last day of the first plan year beginning after December 31, 1993 provided that: (1) the plan is operated in accordance with the requirements of OBRA 1986, and (2) any amendment of the plan documents applies retroactively to OBRA 1986's effective date (January 1, 1988). *See* OBRA 1986 § 9204(c).

## B. *The Putnam Plan*

Appellant Arnold and Gilbert Morse ("Morse")[3] were participants in the Putnam Plan. The Putnam Plan is a defined benefit plan, qualified by the Internal Revenue Service ("I.R.S."), and is an employee pension benefit plan as defined in ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).

Upon the effective date of OBRA 1986, the Putnam Plan provided that a participant's monthly pension benefit was equal to two percent of the participant's average monthly compensation, multiplied by the participant's

years of past and future employment, as such terms were defined by the Plan. Average monthly compensation was based on the highest compensation received in the latest five consecutive calendar years of employment, excluding the five calendar years immediately preceding normal retirement date. The Plan defined normal retirement date as the first day of January nearest the participant's normal retirement age which was defined as age sixty-five.

The net effect of the original Putnam Plan (hereinafter the "Original Provision") was that compensation earned after age sixty was excluded from the calculation of a participant's average monthly compensation. The district court concluded, and Putnam and the Putnam Plan do not dispute on appeal, that this "could have been construed as an age-based distinction in violation of the amended Act." *Arnold v. Putnam Savings Bank Defined Benefit Pension Plan and Trust et al.,* No. 394 Civ 105, slip op. at 6 (D.Conn. March 27, 1997). For that reason, Putnam later amended the Putnam Plan.

Appellant Arnold retired from his position as President and Chief Executive Officer of Putnam on December 31, 1988 at the age of sixty-five. Morse retired from his position at Putnam on June 30, 1988 at the age of 61. At the time Arnold and Morse retired, Putnam did not know how it was going to amend the Putnam Plan to bring it into compliance with the new ERISA provision. Final regulations under the OBRA amendment had not yet been issued.[4] However, ERISA § 204(g)

---

§ 411(b)(1)(H) also apply to ERISA § 204(b)(1)(H). The IRS also has jurisdiction over the interpretation of both ERISA § 204 and I.R.C. § 411. *See* ERISA Reorganization Plan No. 4 of 1978, § 101.

**2.** The amendment originally set the deadline to amend plans as the "end of the first plan year beginning on or after January 1, 1989" but the IRS later extended this deadline to 1990 and then to 1991 and then to 1993. *See* Rev. Proc. 89–65, 1989–2 C.B. 786, § 3.05 (extending deadline to end of the first plan year beginning after December 31, 1990); I.R.S. Notice 90–73, 1990–2 C.B. 353 (extending deadline to end of the first plan year beginning after December 31, 1991); I.R.S. Notice 92–36, 1992–2 C.B. 36 (extending deadline to the end of the first plan year beginning after December 31, 1993).

**3.** In the proceedings below, Executrix Mildred Greenhalgh was a plaintiff on behalf of the estate of Morse. Morse was a participant in the Putnam Plan who also claimed that the Plan violated ERISA when distributing his pension funds. Morse's estate did not appeal the decision of the district court. However, Morse's circumstances are described in the opinion to illustrate the operation of the Putnam Plan.

**4.** The I.R.S. first proposed regulations under I.R.C. § 411(b)(1)(H) in April 1988. The I.R.S. has provided that taxpayers may rely on the proposed regulations for guidance pending the issuance of final orders, but such proposed regulations are not authoritative until finalized. *See* Notice of Proposed Rulemaking, 53 Fed.Reg. 11876, 11878 (1988).

and I.R.C. § 411(d)(6) provided that benefits could not be retroactively reduced by any plan amendment (except in narrow circumstances not relevant to this appeal). *See* 29 U.S.C. § 1054(g). Therefore, Putnam calculated Arnold's and Morse's benefits under the Putnam Plan according to the Original Provision because this represented the minimum benefit due to them. Arnold and Morse were both paid a single lump sum distribution from the Putnam Plan.

For Arnold, this resulted in the exclusion of compensation earned from ages sixty to sixty-five from the calculation of his average monthly compensation. For Morse, because he retired at age sixty-one, compensation earned from ages sixty to sixty-one was excluded from the calculation of his average monthly compensation. The Qualified Plan Consultants retained by Putnam to assist in formulating the amendment to the plan indicated that the Putnam Plan would have to be amended to comply with OBRA 1986, and an additional payout to Arnold and Morse might be required at a later date.

In June 1990, Putnam amended the Putnam Plan (the "Amended Provision"), retroactive to January 1, 1988, to comply with ERISA § 204. The Amended Provision provides:

> Average Monthly Compensation shall be based on the highest 5 consecutive Compensation years of employment, excluding the 5 years immediately prior to actual date of termination of employment for any reason.
>
> The effective date of this provision shall be January 1, 1988.

The Amended Provision was enacted within the remedial amendment period and, the parties agree, complies with the requirements of OBRA 1986 as it calculates a plan participant's average monthly compensation by excluding the last five years of service regardless of the age of the employee.

The benefit provided to Arnold as calculated under the Amended Provision was the same as that calculated under the Original Provision. Thus, if Arnold had retired after July 1990, he would have received the same benefit he received under the age-based income exclusion contained in the Original Pro-

vision. The benefit to Morse under the Amended Provision was actually less than the payout calculated under the Original Provision. No additional payment of benefits was made to Arnold or Morse under the Amended Provision.

### C. *Proceedings Below*

On June 28, 1994, Arnold and Morse brought suit pursuant to ERISA § 502(a)(3) and § 502(a)(1)(B) claiming that Putnam violated ERISA when distributing their pensions. Arnold and Morse sought to recover the benefits they claimed they should have received had Putnam not calculated their benefits using the invalid age-based benefit provision of the Original Provision. Because the facts are not in dispute, the parties each moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Arnold and Morse made the following argument to the district court: At the time of the distribution of their benefits, the Putnam Plan was not in operational compliance because Putnam based its calculation on the Original Provision which used the impermissible age-based criterion. They argued that the fact that the Amended Provision would have permitted the same calculation, though based on a consideration other than age, is merely serendipitous and cannot validate the former violative act. In other words, the retroactive amendment of the Putnam Plan could only cure the plan documents, and not the violation of OBRA 1986 at the time the distributions were made.

The district court determined that Putnam and the Putnam Plan did not violate Section 204(b)(1)(H) of ERISA in calculating the pension benefits, and granted summary judgment in favor of Putnam and the Putnam Plan. The court reasoned that "[t]he flaw in [Arnold's and Morse's] theory that their Plan benefits should have been calculated under the [Original Provision], absent the discriminatory provision, is that it would render the OBRA 1986 provisions for a period of operational compliance and retroactive amendment superfluous or meaningless."

The district court concluded that contrary to Arnold's assertions "OBRA 1986 provides that a plan will be in operational compliance if the plan is operated in accordance with the applicable provision of the law effective January 1, 1988, and any retroactive amendment is consistent with the plan's operation." Therefore, although Putnam "originally calculated [Arnold's] benefits under an impermissible Plan," the retroactive amendment allowed Putnam to comply with the law, "albeit in hindsight."

## II. DISCUSSION

Arnold urges us to find that the district court erred in holding that Putnam and the Putnam Plan were in operational compliance with ERISA § 204(b)(1)(H) when they calculated Arnold's pension benefit. We review the district court's grant of summary judgment *de novo*. *See Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir.1995).

There are no reported decisions analyzing the meaning and scope of operational compliance under ERISA or the I.R.C. As a result, we turn to the specific language of the statutes and their regulations for guidance. As noted in Section I *supra*, under OBRA 1986 a plan was not required to be amended until the end of the remedial amendment period so long as (1) the plan was operated in accordance with the requirements of the OBRA amendment, and (2) the plan, once amended, applied retroactively to OBRA 1986's effective date. OBRA 1986 § 9204(c). Thus, it is undisputed that OBRA 1986 allowed retroactive plan amendments such as the amendment made by Putnam. The question remains, however, whether Putnam's amendment only served to bring the Putnam Plan documents themselves into compliance or whether it also had the effect of bringing Putnam's prior disbursement of

funds to Arnold into compliance with OBRA 1986.

Treasury Regulation § 1.401(b)–1(a) (as amended in 1988) describes the retroactive amendment process as follows:

Under [I.R.C.] section 401(b) a ... pension ... plan which does not satisfy the requirements of [I.R.C. ] section 401(a) on any day solely as a result of a disqualifying provision ... shall be considered to have satisfied such requirements on such date if, on or before the last day of the remedial amendment period ... with respect to such disqualifying provision, all provisions of the plan which are necessary to satisfy all requirements ... are in effect and have been made effective for all purposes for the whole of such period. Under some circumstances, it may not be possible to amend a plan retroactively so that all provisions of the plan ... are in fact made effective for the whole remedial amendment period. If it is not possible, the requirements of this section will not be satisfied even if the employer adopts a retroactive plan amendment which, in form, appears to satisfy such requirements.

We believe this regulation ratifies Putnam's conduct in calculating Arnold's benefit. The regulation clarifies that Putnam was entitled not only to retroactively amend the plan documents but was required to make the retroactive amendment "effective for all purposes for the whole of [the remedial amendment] period." Putnam amended the Putnam Plan to eliminate the age discriminatory provision effective retroactively and ensured that Arnold and Morse received the benefits due to them under the amended non-discriminatory plan.[5]

In operation, Arnold's benefit accrual under the Putnam Plan did not violate OBRA

---

5. Arnold relies on three tax cases to argue that retroactive amendments cure plan documents and have no effect on any actions taken by plan operators during the remedial amendment period. *See Forsyth Emergency Servs. v. Commissioner*, 68 T.C. 881, 891, 1977 WL 3640 (1977); *Myron v. United States*, 382 F.Supp. 590, 598 (C.D.Cal.1974), *aff'd,* 550 F.2d 1145 (9th Cir. 1977); *Orthopaedic Assocs. v. United States*, 487 F.Supp. 868, 873 (E.D.Tenn.1980). Each of these cases concerned tax years prior to the issuance of Treasury Regulation § 1.401(b)–1(a) and none of the cases address operational compliance. Similarly, Arnold's reliance on Example 1 in Proposed Internal Revenue Code Regulation § 1.411(b)–2(f)(1)(vi) is misplaced because that example does not address the effect of retroactive amendment of a plan. *See* Prop. Treas. Reg. § 1.411(b)–2(f)(1)(vi), 53 Fed.Reg. 11876, 11884–85 (1988).

1986 because the benefit did not "cease" nor was it "reduced" because of Arnold's attainment of any age. Putnam made an initial pay-out in 1988 to Arnold conscious of the fact that once its plan was amended recalculation of the benefit would be necessary. The initial pay-out was not considered by Putnam to constitute the full payment to Arnold, but rather was a minimum payment. At the time of pay-out Putnam had to consider Arnold's benefit amount under the Original Provision because the new legislation made clear that a plan amendment could not decrease a participant's accrued benefit calculated without regard to the amendment. See 29 U.S.C. § 1054(g). Section II of I.R.S. Notice 88–131, 1988–2 C.B. 546, explains:

> Compliance with section 411(d)(6) [and ERISA § 204(g)] requires that a participant's accrued benefit immediately after the later of the adoption or effective date of an amendment not be less than the greater of (1) the participant's accrued benefit calculated without regard to the amendment or (2) the participant's accrued benefit calculated in accordance with the amendment.

Once the Putnam Plan was amended, Putnam recalculated Arnold's benefit and found that it was the same as had been previously paid out. Thus, no additional payment was necessary. Had the original payment been less than the benefit under the Amended Provision, by virtue of Treasury Regulation § 1.401(b)–1(a), Putnam would have been required to pay Arnold the difference between the two benefit calculations in order to make the amendment "effective for all purposes."

This interpretation of the remedial amendment period, it seems to us, strikes an appropriate balance between pensioners' rights under the new law and the need of plan operators for time to restructure their plans in order to comply with the new law and its implementing regulations. Time was needed because the plan amendment process likely included, as it did in this case, discussions with pension plan consultants or attorneys who could interpret the new law and implementing regulations in order to remedy the offending portions of the original pension plans. It should also be noted that the proposed regulations implementing OBRA 1986 were not issued until April 1988, several months into the remedial amendment period for some plans.

Thus, it was reasonable for Putnam to make an initial pay-out to Arnold until such time as it had fully understood its new responsibilities under the law and had digested the recently issued proposed regulations. By placing a deadline on passage of plan amendments and requiring that plan amendments be made retroactive, the new law ensured that pensioners retiring during the remedial amendment period would within a reasonable amount of time receive their pension benefit without consideration of discriminatory age-based criteria.[6]

The initial Revenue Procedure which extended the date of the remedial amendment period supports our interpretation of operational compliance. See Rev. Proc. 89–65, 1989–2 C.B. 786. It states that the extension of time "will provide sponsors of qualified pensions ... with additional time to review proposed regulations and make decisions as to how to redesign their plans to comply with the [OBRA amendments to the I.R.C.]." Id. § 3.01.

It is Arnold's position that, regardless of the effect of any retroactive amendment, upon its passage OBRA 1986 acted immediately to strike out the objectionable age-based criterion from a plan's original provision and to leave the rest of the plan intact. Without the offending language, Putnam was required to consider Arnold's last five years of service when calculating his pension benefit and should have paid him $79,256.66 more. However, if the Putnam Plan was automatically amended by the passage of OBRA 1986, there would be no point in retroactively amending the Putnam Plan to include the non-discriminatory age-based criterion.

---

**6.** It is true that the remedial amendment period was, in the end, six years long. Arnold asserts this is too long a time period to make pensioners wait for final distribution. The remedial amendment period under OBRA 1986, as noted supra, was initially two years and was twice extended by the I.R.S. in order to give plan operators more time to develop new plans. Moreover, both Arnold and Morse received upon retirement the benefit payment to which they were entitled.

And, as the district court found, the OBRA 1986 provisions on operational compliance and retroactive amendment would become "superfluous."

### III. CONCLUSION

We AFFIRM the decision of the district court granting Putnam's and the Putnam Plan's motion for summary judgment and holding that they did not violate Section 204(b)(1)(H) of ERISA in calculating Arnold's pension benefits.