FEDERAL LAND BANK ASSOCIATION OF ASHEVILLE, NORTH CAROLINA, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

MOUNTAIN PRODUCTION CREDIT ASSOCIATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3457–76R, 3458–76R.    Filed August 26, 1980.

*John S. Nolan* and *Gary G. Quintiere,* for the petitioners.
*Kimley R. Johnson,* for the respondent.

## OPINION

WILES, *Judge:* This case is on remand from the United States Court of Appeals for the Fourth Circuit for further proceedings on the merits. *Federal Land Bank Association of Asheville, North Carolina, et al. v. Commissioner,* 573 F.2d 179 (4th Cir. 1978).

On April 23, 1976, petitioners filed petitions with this Court for declaratory relief pursuant to section 7476[1] which provides for declaratory judgments relating to qualification of certain retirement plans. In response to the petitions for declaratory relief, the Commissioner filed motions to dismiss for lack of jurisdiction contending that section 7476 was not applicable to the particular plan year at issue. In our opinion filed October 6, 1976 (67 T.C. 29), we adopted respondent's position and dismissed the petitions on jurisdictional grounds.

On appeal, the United States Court of Appeals for the Fourth Circuit disagreed with and reversed our dismissal of the petitions on jurisdictional grounds and accordingly remanded the case for a decision on the merits. *Federal Land Bank Association of Asheville, North Carolina, et al. v. Commissioner, supra.* The sole issue before us is whether the Commissioner's determinations that petitioners' retirement plans do not qualify

---

[1]All statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years at issue, unless otherwise indicated.

for special tax treatment under section 401(a) should be sustained for the plan year ending August 31, 1974. Resolution of that issue depends upon whether the Commissioner erred in determining that the retirement plans adopted by petitioners failed the coverage requirements of section 401(a)(3)(B).

Pursuant to Rule 122, Tax Court Rules of Practice and Procedure, this case was submitted for decision on the stipulated administrative record which is incorporated herein by this reference. The evidentiary facts and representations contained in the administrative record are assumed to be true for purposes of this proceeding.

Petitioners, the Federal Land Bank Association of Asheville, North Carolina (hereinafter FLBA), and the Mountain Production Credit Association (hereinafter MPCA), are federally chartered instrumentalities of the United States under 12 U.S.C. sec. 2031, and 12 U.S.C. sec. 2091, respectively. The FLBA is a Federal land bank association which assists farmers in making long-term real estate loans from Federal land banks and provides services with respect to such loans. The MPCA is a production credit association which makes loans to farmers with funds provided by Federal intermediate credit banks and also provides loan services to borrowers after the loans are made. The MPCA loans enable farmers to purchase agricultural production materials such as tractors, fertilizer, and seed. Petitioners are both located at 231 Haywood Street, Asheville, N.C. Although land bank associations and production credit associations are different corporate entities providing different services, they consolidate their efforts by sharing the same office space and by operating with the same employees. In addition to sharing office space, petitioners have common employees so that MPCA pays 60 percent of an employee's salary and FLBA pays the remaining 40 percent.

Petitioners adopted prototype retirement plans for their employees effective July 1, 1973, by agreements dated September 13, 1973. Since the plans are identical and apply to the same group of employees, the plans hereinafter will be discussed as though they are a single plan and will be referred to as the "plan."

The plan was based on a prototype plan designed by the American Industries Retirement Co. (hereinafter AIRCO), located in Houston, Tex. AIRCO is a private corporation with trust

powers duly organized and existing under the laws of the State of Texas. AIRCO designed the prototype as part of the American Industries Retirement System (hereinafter AIRS) which was established by a declaration of trust on May 11, 1964, for use by employers in establishing employee benefit plans. The AIRS prototype had been approved by the Internal Revenue Service at the time of its adoption by petitioners.

The plan petitioners adopted is a fully trusteed money purchase plan with employer contributions based on basic compensation. All full-time employees meeting a nominal service requirement are eligible to participate. A full-time employee is any person who works for petitioners more than 20 hours per week for more than 5 months per year. Any person employed on a full-time basis by petitioners on July 1 of any given year is eligible to participate on the following September 1. Thus, for the first plan year beginning September 1, 1973, participation was extended to all full-time employees who were employed by petitioners as of July 1, 1973. If a person were hired on July 2, however, that employee would not be permitted to participate in the plan until September 1 of the following year.

To participate in the plan, an employee must agree to a 6-percent reduction in his/her basic compensation. This is accomplished by the execution of a salary reduction agreement by the employee prior to September 1 on which his participation is to commence. The plan defines "basic compensation" as before-tax compensation, exclusive of overtime and incentive pay. The salary reduction agreement is irrevocable for the duration of the plan year to which it applies and must be renewed by the participant prior to September 1 of each plan year if the participant elects to participate during that year.

Under the plan, petitioners must contribute annually an amount equal to 9 percent of the basic compensation of each participant. Six percent of that contribution is recovered by petitioners through monthly payroll deductions pursuant to the participant's agreement to reduce his basic compensation by 6 percent. A participant is at all times fully vested in his/her salary reduction contributions. As to the employer contributions made in excess of each participant's salary reduction contributions, vesting occurs incrementally at the rate of 20 percent per year of participation for each of the first 5 years. Thus, after the

fifth year of participation, the participant is fully vested in such excess employer contributions.

During the initial plan year beginning on September 1, 1973, 2 out of petitioners' 23 eligible employees participated in the plan. The following table sets forth the eligible employees and the compensation of each, as of June 30, 1973, and the participation for the plan year which began on September 1, 1973, and ended on August 31, 1974:

| Eligible employees | Annual salary[2] | Participant |
|---|---|---|
| 1. James L. Beck | $15,600 | |
| 2. Alton L. Ward | 14,460 | Elected |
| 3. Jacob F. Grigg | 12,540 | |
| 4. Cloice Plemmons | 11,940 | |
| 5. Frank L. FitzSimons, Jr | 11,880 | |
| 6. James L. Carringer | 10,020 | |
| 7. Roy C. Ramsey | 9,600 | |
| 8. Thomas S. Fouts | 8,820 | |
| 9. William H. Buckner, Jr | 7,600 | |
| 10. David R. Israel | 7,200 | |
| 11. Aldeen Waldrup | 6,360 | |
| 12. Annette M. Ogle | 6,180 | |
| 13. Judy B. Freeman | 6,120 | |
| 14. Betty J. Roberts | 5,700 | Elected |
| 15. Hazel S. Willis | 5,520 | |
| 16. Cathy T. Crawford | 5,340 | |
| 17. Donna R. Pipes | 5,340 | |
| 18. Marie Pangle | 5,340 | |
| 19. Celia Anne Jackson | 5,100 | |
| 20. Juanita Phillips | 4,920 | |
| 21. Betty B. Nicholson | 4,440 | |
| 22. Donna M. Ingle | 4,140 | |
| 23. Sandra Mann | 4,020 | |

For the plan year beginning September 1, 1973, petitioners' president and vice president were Jacob F. Grigg and Alton L. Ward, respectively. Thomas S. Fouts, Cloice Plemmons, James L. Beck, Roy C. Ramsey, William H. Buckner, Jr., and Frank L. FitzSimons, Jr., were junior officers or supervisors. Jacob F.

---

[2] The salary reduction requirement, a condition for participation in the plan, operated on the basis of an employee's monthly income as of July 1 prior to the beginning of a plan year.

Grigg, Thomas S. Fouts, Cloice Plemmons, and Frank L. FitzSimons, Jr., have loans from the MPCA. Such borrowers are required by law (12 U.S.C. sec. 2094(f)) to purchase voting stock in the association to aid in capitalization of the loan. Each borrower has only one vote at stockholder meetings regardless of the amount of stock owned.

In applications dated May 16, 1974, AIRCO sought a determination from the District Director of the Internal Revenue Service at Austin, Tex., that the plan, as adopted by petitioners, was qualified within the rules of section 401(a). By letters dated February 24, 1975, petitioners were informed by the District Director that the plan did not meet the percentage requirements of section 401(a)(3)(A) or the classification test set forth in section 401(a)(3)(B). With respect to section 401(a)(3), the District Director found that coverage under the plan discriminated in favor of the prohibited group.

The letters of February 24, 1975, notified petitioners of their right of appeal to the National Office of the Internal Revenue Service. On March 31, 1975, petitioners were granted an extension of time to file such appeal until April 9, 1975. On April 9, 1975, petitioners appealed the District Director's determination. On February 20, 1976, the Employee Plans Technical Branch, National Office of the Internal Revenue Service, notified petitioners that the District Director's adverse determination had been sustained. On March 10, 1976, the District Director notified petitioners that his earlier letter on February 24, 1975, would constitute the final determination.

Petitioners seek to overturn the Commissioner's determination that the retirement plan they adopted in 1973 failed the coverage requirements of section 401(a)(3)(B). Petitioners are entitled to deductions for contributions to the plan trust if the trust is exempt from taxation under section 501(a). That exemption is contingent upon whether the plan trust met the requirements of a "qualified trust" within the meaning of section 401(a).

At issue here is whether petitioners' plan complied with section 401(a)(3) which provides:

(a) REQUIREMENTS FOR QUALIFICATION.—A trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section–

* * * * * * *

(3) if the trust, or two or more trusts, or the trust or trusts and annuity plan or plans are designated by the employer as constituting parts of a plan intended to qualify under this subsection which benefits either—

(A) 70 percent or more of all the employees, or 80 percent or more of all the employees who are eligible to benefit under the plan if 70 percent or more of all the employees are eligible to benefit under the plan, excluding in each case employees who have been employed not more than a minimum period prescribed by the plan, not exceeding 5 years, employees whose customary employment is for not more than 20 hours in any one week, and employees whose customary employment is for not more than 5 months in any calendar year, or

(B) such employees as qualify under a classification set up by the employer and found by the Secretary or his delegate not to be discriminatory in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees; * * *

The parties agree that petitioners' plan does not qualify under either of the percentage tests for coverage under section 401(a)(3)(A). Their dispute involves whether petitioners' plan set up a classification of employees which discriminates in favor of employees who are officers, shareholders, supervisors, or highly compensated employees (hereinafter sometimes referred to as the prohibited group).

Section 401(a)(3)(B) deals with coverage, and in effect conditions qualification of the plan upon a determination by the Commissioner that the classification of employees eligible to participate in the plan is not discriminatory in favor of the prohibited group.[3] *Pulver Roofing Co. v. Commissioner*, 70 T.C. 1001, 1007 (1978); *Babst Services, Inc. v. Commissioner*, 67 T.C. 131, 136 (1976). Since the Commissioner's determination is specifically authorized by section 401(a)(3)(B), such determination should not be overturned unless the taxpayer demonstrates it was arbitrary, unreasonable, or an abuse of discretion.[4]

---

[3]Sec. 401(a)(4), on the other hand, deals with the functioning of the plan, and it in substance makes qualification turn upon whether "the contribution or benefits provided under the plan do not discriminate in favor of" the prohibited group. *Babst Services, Inc. v. Commissioner*, 67 T.C. 131, 136 (1976). The Commissioner's determination as to coverage of the plan herein was based solely on sec. 401(a)(3)(A) and (B).

[4]In *E. F. Higgins & Co. v. Commissioner*, 74 T.C. 1029 (1980), this Court recently held that this heavy burden of proof does not apply to sec. 401(a)(4). We noted that, unlike sec. 401(a)(3)(B), there is no statutory grant of discretionary authority for the Commissioner to determine whether the contributions or benefits of a plan discriminate under sec. 401(a)(4).

*Loevsky v. Commissioner*, 55 T.C. 1144, 1149 (1971), affd. per curiam 471 F.2d 1178 (3d Cir. 1973). cert. denied 412 U.S. 919 (1973); *Ed & Jim Fleitz, Inc., et al. v. Commissioner*, 50 T.C. 384, 391 (1968).

Prior to addressing the central issue in this case, we must consider petitioners' contention that the first 2 years the plan was in effect are before us. Petitioners' declaratory judgment action is based on the Commissioner's adverse determination which in turn is based on the Form 4573, Application For Determination, filed by the petitioners. Although the District Director's determination letter does not expressly limit disqualification of the plan to the initial plan year, the findings and conclusions of the National Office, which sustained the District Director's determination, show that it considered the plan not qualified only with respect to the initial plan year (September 1, 1973, through August 31, 1974). Moreover, petitioners' Form 4573 clearly requests the determination for the plan year beginning September 1, 1973, and ending August 31, 1974. In view that petitioners' request for a determination was with respect to the initial plan year and the National Office's determination letter was also clearly based on the initial plan year, we are unwilling to expand our jurisdiction over this matter under section 7476 to include the second year of the plan. Accordingly, our determination will be based on the facts arising during the initial plan year.

As to the central issue in this case, the parties agree that of the 23 employees eligible to participate in the plan, 9 are highly paid employees falling within the prohibited group. Of those 9 prohibited group employees, 1 elected to participate in the plan during the year at issue.

Respondent contends that petitioners' plan does not meet the coverage requirements of section 401(a)(3)(B) for qualification during the plan's initial year in that it set up a classification of employees discriminating in favor of employees within the prohibited group. Respondent's primary argument is that petitioners' plan discriminated in favor of the prohibited group because it did not benefit employees in general or represent a fair cross-section of the employees eligible to participate. In support of this argument, respondent relies on section 1.401–1(b)(3), Income Tax Regs., which provides, in part, as follows:

(3) If the plan is so designed as to amount to a subterfuge for the

distribution of profits to shareholders, it will not qualify as a plan for the exclusive benefit of employees even though other employees who are not shareholders are also included under the plan. The *plan must benefit the employees in general,* although it need not provide benefits for all of the employees. Among the employees to be benefited may be persons who are officers and shareholders. However, a plan is not for the exclusive benefit of employees in general if, by any device whatever, it discriminates either in eligibility requirements, contributions, or benefits in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or the highly compensated employees. * * * [Emphasis added.]

Respondent's argument is based on the fact that only two of petitioners' eligible employees elected to participate during the initial year the plan went into effect and that one of the two participants fell within the prohibited group of highy paid employees. Respondent contends that employees from all or substantially all compensation levels should have been participating in the plan.

Petitioners argue that the fair cross-section test is an inappropriate test for determining whether their plan discriminated in favor of the prohibited group. They argue, in the alternative, that even if the fair cross-section test is a valid test for making determinations with respect to discrimination under section 401(a)(3)(B), it does not necessarily follow that failing to satisfy that test results in setting up a classification discriminating in favor of the prohibited group. Petitioners contend that by overemphasizing the fair cross-section test, respondent has failed to consider all the facts and circumstances which clearly show that the plan did not discriminate in favor of the prohibited group.

While we disagree with petitioners' argument that the fair cross-section test is inappropriate for determining whether their plan discriminated in favor of the prohibited group, we do agree with their alternative argument. To be sure, the fair cross-section test is a valid test for determining whether a plan discriminates in favor of the prohibited group. *Liberty Machine Works, Inc. v. Commissioner,* 62 T.C. 621, 631–632 (1974). The test has been particularly effective where an employer sets up more than one plan for different classifications of employees and participation in one of the plans is dominated by employees who are members of the prohibited group. See *Liberty Machine Works, Inc. v. Commissioner, supra.* It also has been effective

where an employer sets up one plan for its employees, most of whom constitute members of the prohibited group, and participation in the plan is dominated by members of the prohibited group. See *Forsyth Emergency Services, P.A. v. Commissioner*, 68 T.C. 881, 891 (1977).

Neither the statute, nor the regulations, however, provide that an employer's plan must satisfy independently the fair cross-section test to qualify under section 401(a). Section 401(a)(3)(B) provides that a plan shall not set up a classification of employees discriminatory in favor of the prohibited group; it does not require that a plan include a fair cross-section of the employees eligible to participate. Moreover, section 1.401–1(b)(3), Income Tax Regs., provides that the plan must "benefit the employees in general" rather than serve as a subterfuge for the distribution of profits to shareholders. Although the failure of a plan to include a fair cross-section of employees *may* indicate that such plan discriminates in favor of the prohibited group, a plan does not necessarily discriminate because it fails to satisfy the fair cross-section test. Discrimination in favor of the prohibited group must exist independent of whether a fair cross-section of eligible employees elect to participate in a plan.

Upon viewing the entire record, we simply are unable to find support for respondent's contention that petitioner's plan sets up a classification which discriminates in favor of the prohibited group and believe, therefore, that respondent abused his discretion by disqualifying the plan for the initial year it went into effect. The plan was open to all of petitioners' employees who satisfied nominal service requirements. Of the 23 employees meeting the minimal eligibility requirements, 2 elected to participate. Of the 2 participants, 1 was a member of the prohibited group. Although 1 member of the prohibited group elected to participate, the other 8 members did not elect to participate during the year at issue.

The participation of one member of the prohibited group did not tip the coverage scales in favor of the prohibited group. Cf. *Forsyth Emergency Services, P.A. v. Commissioner, supra.* Therefore, although the participants in the plan did not constitute a fair cross-section of petitioners' employees, we do not view that as a sufficient ground for disqualifying the plan where no discrimination in favor of the prohibited group resulted. For this reason, respondent's disqualification of petitioners' plan as a

result of applying the fair cross-section test for administrative purposes was arbitrary, unreasonable, and an abuse of discretion.[5]

Furthermore, we believe petitioners' plan did comply with section 1.401–1(b)(3), Income Tax Regs., by benefiting employees, generally. As previously noted, the plan was open to all of petitioners' full-time employees who satisfied nominal service requirements. An employee who worked more than 20 hours a week for more than 5 months a year was considered a full-time employee under the plan. A full-time employee who was employed by petitioners on July 1 of a given year was eligible to participate in the plan commencing September 1 of that year. A full-time employee hired after July 1 of a given year was not eligible to participate in the plan until September 1 of the following year. Thus, the service requirements ranged between 2 and 14 months of employment depending upon an employee's date of hire.

In addition to these nominal service requirements, the plan had other features which were designed to encourage participation. For example, the plan had neither a minimum nor a maximum age restriction. Thus, all full-time employees were eligible to participate regardless of age. Participation in the plan was at the option of each eligible employee, a choice which arose annually.

The plan further provided that an employee electing to participate in the plan agree in writing to reduce his or her basic compensation by 6 percent as a contribution to the plan. In return, petitioners were required to contribute 3 percent of the electing employee's basic compensation to the plan on behalf of

---

[5]Respondent claims that Rev. Rul. 66–12, 1966–1 C.B. 72, was the initial ruling in the development of the fair cross-section test. That ruling and most of the other rulings relied upon by respondent for applying the fair cross-section test, however, deal with participation requirements within the context of salaried-only plans, plans which, by their specific terms, exclude from entry certain classes of employees. See, for example, Rev. Rul. 70–200, 1970–1 C.B. 101. Since those plans typically exclude from coverage large segments of the employer's work force paid on an hourly basis, the issue naturally is whether the covered classification encompasses a sufficient range of employees so as not to favor those in the prohibited group. See Liberty Machine Works, Inc. v. Commissioner, 62 T.C. 621, 631–632 (1974). The question in those cases was whether the classification was too narrow and, therefore, discriminatory. In the instant case, however, there is no covered classification as such. On the contrary, all full-time employees (none of whom are paid on an hourly basis or belong to a union) meeting a nominal service requirement are eligible to participate in the plan. The only other condition for participation is that the employee voluntarily execute an agreement to deduct, in monthly increments, 6 percent of his basic compensation over the plan year.

such employee. The plan's vesting provisions were also generous. The plan provided for vesting of employer contributions at the rate of 20 percent per year of participation so that after 5 years of participation, the participant was fully vested in all prior and future employer contributions. The participant was, of course, vested in his or her salary reduction contributions at the time such contributions were made to the plan.

The 6-percent employee contribution was not fixed at so high a level as to discourage participation by lower paid employees. In fact, for more than 25 years, the Internal Revenue Service has followed a general rule that plans requiring employee contributions of 6 percent or less of compensation did not impose a burdensome requirement on lower paid employees. See Rev. Rul. 33, 1953–1 C.B. 267, 275; see also Rev. Rul. 69–421, 1969–2 C.B. 59, 71. Moreover, the contributions required of the employees were not so burdensome as to make the plan acceptable only to the highly paid employees. See sec. 1.401–3(d), Income Tax Regs. Not only did most of the highly paid employees decline to participate during the initial year of the plan's operation, but, numerically, participation by the lower paid employees was equal to participation from the higher paid ranks.

While petitioners acknowledge that the overall participation rate was low during the intial year the plan was in operation, that, in itself, is not sufficient to find the plan discriminatory in favor of the prohibited group. During the initial year, participation by employees in both groups was low. Whereas one employee of the prohibited group elected to participate, many did not. Since all full-time employees were eligible to participate in the plan, and the low participation rate is found in both groups, we find no reasonable basis on which to find that petitioners' plan established a classification of employees discriminating in favor of the prohibited group.

As we already suggested, the fair cross-section test is a factor to consider in determining whether the plan at issue satisfies the requirements of section 401(a)(3)(B). That test, however, cannot be made exclusive in that the legislative history pertaining to section 401(a)(3)(B) emphasizes coverage discriminatory in favor

of the prohibited group. In enacting the predecessor of that section[6] the committee report expressly stated that:

> The coverage and nondiscrimination requirements would operate to safeguard the public against the use of the pension plan as a tax avoidance device by management groups seeking to compensate themselves without paying their appropriate taxes. [H. Rept. 2333, 77th Cong., 2d Sess. (1942), 1942-2 C.B. 372, 413.]

The report further states that:

> It is not necessary that a pension plan be made applicable to all of the departments or operations of an employer. He may confine it to the employees of a certain designated department, to employees who have reached designated ages or who have been in his employment for a designated number of years, or to clerical or salaried employees * * * , provided that the effect of covering only such employees is not to discriminate in favor of highly compensated employees, officers, shareholders, or persons whose principal duties consist in supervising the work of other employees. [H. Rept. 2333, 77th Cong., 2d Sess. (1942), 1942-2 C.B. 372, 450.]

By overemphasizing the importance of the applicaton of the fair cross-section test, respondent distorts the primary purpose of the nondiscrimination rules which was to prevent tax manipulation by management employees. No such manipulation by the prohibited group can be found in this record, making respondent's contention even less convincing.

Therefore, in view that: (1) The plan was open to all full-time employees meeting nominal service requirements and did not exclude any such employee on the basis of any discriminatory classification; (2) the participation rate of prohibited group employees did not show the plan favored such group in any way; and (3) the difference in the participation levels between prohibited group and nonprohibited group employees was insignificant; we must conclude that petitioners' plan did not discriminate in favor of the prohibited group and should not have been disqualified for the initial year it went into effect.

To reflect the foregoing,

*An appropriate order will be issued.*

---

[6]The forerunner of sec. 401(a)(3)(B) was sec. 165(a), I.R.C. 1939.