FUJINON OPTICAL, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 12035–79R.    Filed March 31, 1981.

*Roger L. Selfe*, for the petitioner.
*Richard S. Kestenbaum*, for the respondent.

## OPINION

NIMS, *Judge*: Respondent determined that petitioner's profit-sharing plan failed to meet one of the qualification requirements of section 401(a)[1] for the taxable year 1976, specifically, the requirement of section 401(a)(3) that the plan must satisfy the minimum participation standards contained in section 410. Pursuant to section 7476,[2] petitioner has invoked the jurisdiction of this Court for a declaratory judgment that its profit-sharing plan satisfies such qualification requirements.

The issues for our decision are:

(1) Whether all of the employees of the controlled group of which petitioner is a member must, pursuant to section 414(b), be considered together for purposes of determining whether petitioner's plan satisfies the coverage requirements of section 410(b)(1); or, in the alternative,

(2) Whether petitioner's plan, standing alone, satisfies the coverage requirements of section 410(b)(1)(B).

This case was submitted for our decision under Rule 122, Tax Court Rules of Practice and Procedure. The administrative record in this case, as to which the parties have stipulated, is assumed to be true for purposes of this proceeding.

---

[1] All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise specifically indicated.

[2] Petitioner has satisfied the relevant prerequisites for this declaratory judgment action: petitioner is the employer whose plan qualification is at issue, sec. 7476(b)(1); its exhaustion of administrative remedies is evidenced by respondent's final adverse determination letter dated May 17, 1979, sec. 7476(b)(3); and a timely petition with this Court was filed on Aug. 16, 1979, sec. 7476(b)(5).

Fujinon Optical, Inc. (petitioner), is a wholly owned subsidiary of Fuji Photo Optical Co., Ltd., a Japan corporation, which is in turn an 80-percent-owned subsidiary of Fuji Photo Film Co., Ltd., also a Japan corporation. Fuji Photo Film Co., Ltd., has two direct U.S. subsidiaries, both of which are wholly owned: Fuji Photo Film U.S.A., Inc. (Film USA), and Fuji Photo Film Hawaii, Inc. (Film Hawaii). Petitioner, Film USA, and Film Hawaii are all members of a controlled group within the meaning of section 1563(a).

Petitioner is a distributor of highly sophisticated optical equipment designed for professional and industrial use, such as television camera lenses, television optical systems, closed circuit television camera lenses, medical fiber-optics, and specialized marine binoculars. Petitioner is also engaged in the development of complex optics to meet the individual needs of its clients. Petitioner endeavors to meet the particular needs of its customers by designing and developing specialized lenses and optical systems. By contrast, since Film USA and Film Hawaii are simply distributors of film, tape, and cameras essentially for use by nonprofessionals, it is not necessary for the two latter corporations to employ the highly trained technical personnel of the type required in petitioner's business.

Petitioner's business is and always has been totally independent of that of Film USA and Film Hawaii. There has never been any business relationship of any kind between petitioner and the other two companies. There are no common employees and there has never been any transfer of employees between petitioner and Film USA or Film Hawaii. Petitioner's business is in no way integral with or even helpful to the business of either of the other companies. The management of each company is the responsibility of its own officers and directors, and there are no intercompany decisions or communications.

Petitioner adopted its profit-sharing plan in 1973. The Internal Revenue Service issued a favorable determination letter regarding this plan on January 25, 1975. Petitioner amended the plan on July 30, 1976, in order to comply with the provisions of the Employee Retirement Income Security Act of 1974. On September 12, 1977, petitioner filed Form 5301 (Application for Determination), requesting a determination that its profit-sharing plan as amended qualified under section 401(a). On January

30, 1978, the plan was further amended at the suggestion of the Manhattan Key District Office of the Revenue Service.

As of December 31, 1976, petitioner had 15 employees, 8 of whom were participants in the plan. The remaining 7 employees were excluded from participation in the plan because they did not meet the plan's eligibility requirements that an employee must be 25 years of age and have completed 1 year of service.

As of December 31, 1976, the salary distribution for petitioner's employees and plan participants was as follows:

| Compensation paid | Total number of employees | Number of participating employees |
|---|---|---|
| $5,000 to 10,000 | 6 | 0 |
| 10,001 to 15,000 | 2 | 1 |
| 15,001 to 20,000 | 0 | 0 |
| 20,001 to 25,000 | 3 | 3 |
| 25,001 to 30,000 | 2 | 2 |
| 30,001 to 35,000 | 0 | 0 |
| 35,001 to 40,000 | 1 | 1 |
| 40,001 to 45,000 | 0 | 0 |
| 45,001 to 50,000 | 0 | 0 |
| 50,001 and over | 1 | 1 |
| Totals | 15 | 8 |

As of December 31, 1976, Film USA had a 5-percent money purchase plan which covered 73 of its 140 employees. As of that same date, Film Hawaii had 7 employees and no retirement or deferred compensation plan.[3]

The salary distribution as of December 31, 1976, for petitioner's and Film USA's employees was as follows:

| | Petitioner | | Film USA | |
|---|---|---|---|---|
| Compensation paid | Total number of employees | Percentage | Total number of employees | Percentage |
| $5,000 to 10,000 | 6 | 40.0 | 65 | 46.4 |
| 10,001 to 15,000 | 2 | 13.3 | 17 | 12.2 |
| 15,001 to 20,000 | 0 | --- | 41 | 29.3 |
| 20,001 to 25,000 | 3 | 20.0 | 7 | 5.0 |
| 25,001 to 30,000 | 2 | 13.3 | 5 | 3.6 |
| 30,001 to 35,000 | 0 | --- | 1 | .7 |
| 35,001 to 40,000 | 1 | 6.7 | 3 | 2.1 |

---

[3]Compensation data for the employees of Film Hawaii are not contained in the record.

| | | | |
|---|---|---|---|
| 40,001 to 45,000 | 0 | --- | 0 | --- |
| 45,001 to 50,000 | 0 | --- | 1 | .7 |
| 50,001 and over | 1 | 6.7 | 0 | --- |
| Totals | 15 | 100.0 | 140 | 100.0 |

An adverse determination letter was issued to petitioner on May 17, 1979, wherein respondent determined that petitioner's profit-sharing plan failed to qualify under section 401(a). The reasons given for the adverse determination were as follows:

The Fujinon Optical, Inc. Profit Sharing Plan does not meet the participation requirements of IRC section 410(b)(1)(A) because it does not cover at least 70 percent of all employees eligible to participate in the plan. When considered alone, the plan does not meet the requirements of IRC section 410(b)(1)(B) because it covers employees who are categorized as highly paid. When considered as a unit with the Fuji Photo Film, USA, Inc. Pension Plan, coverage fails to meet the nondiscriminatory requirements of IRC section 401(a)(4). Accordingly, the plan is not qualified within the meaning of IRC section 401.

Section 401(a)(3) provides that in order for a profit-sharing plan to be qualified it must satisfy the requirements of section 410. Section 410(b) concerns the *coverage* requirements for a qualified plan.[4] Because petitioner's plan would satisfy the coverage requirements of section 410(b)(1)(A) if the employees of Film USA and Film Hawaii were not included for purposes of applying that section,[5] we will first consider petitioner's argument that section 414(b) does not mandate the aggregation of all of the member employees of the controlled group in the instant case.

Section 414(b) provides, among other things, that for purposes of sections 401(a) and 410, all employees of corporations which are members of a controlled group within the meaning of section 1563(a) shall be treated as if they are employed by a single employer. With regard to section 410(b)(1),[6] which contains

---

[4] Whether a plan discriminates in terms of its contributions and benefits under sec. 401(a)(4) is a separate issue, and is not the question before us. See *Pulver Roofing Co. v. Commissioner*, 70 T.C. 1001, 1007 (1978); *Babst Services, Inc. v. Commissioner*, 67 T.C. 131, 136 (1976). The reference to sec. 401(a)(4) contained in the adverse determination letter in connection with the *coverage* aspects of petitioner's and Film USA's plan is thus not germane to our inquiry.

[5] With reference solely to petitioner's employees, the plan would benefit 100 percent of its eligible employees, thus satisfying the mechanical test of sec. 410(b)(1)(A). All of the ineligible employees would be excluded from consideration solely for not having satisfied the minimum age and service requirements, as permitted by said section.

[6] Sec. 410(b)(1) provides as follows:

eligibility requirements relevant in this case, petitioner concedes that if its employees cannot be considered without reference to those of the other members of the controlled group, its plan fails the mechanical test of section 410(b)(1)(A). Petitioner does not urge, and the record contains no evidence, that the coverage requirements might conceivably have been satisfied by the alternative provisions of the lead-in provisions of section 410(b)(1) if petitioner had designated its plan as part of a plan which also covered the employees of petitioner's corporate relatives and which was intended to qualify under section 401(a).

It is quite apparent that, standing alone, the plan of an individual member of a controlled group will seldom, if ever, meet the mechanical test of section 410(b)(1)(A) unless that member is the substantially largest corporation in the group in terms of number of employees and the other corporations are quite insignificant in such terms. (Petitioner is not in such a dominating position.) Section 410(b)(1)(A), but for those situations where section 410(b)(1)(B) may be applicable, thus will require as a practical matter the electing of treatment of all plans within the controlled group as constituting parts of a single plan in order to achieve eligibility. Since neither petitioner nor its corporate parent has made such election, petitioner therefore must seek qualification of its plan under section 410(b)(1)(B).

Petitioner does not dispute that it, Film USA, and Film Hawaii together are members of a controlled group within the meaning of section 1563(a). Rather, petitioner argues that section 414(b) should not be applied to its plan because petitioner and its plan were not created or manipulated for the purpose of discriminating in favor of its highly compensated employees. It

---

(1) In general.—A trust shall not constitute a qualified trust under section 401(a) unless the trust, or two or more trusts, or the trust or trusts and annuity plan or plans are designated by the employer as constituting parts of a plan intended to qualify under section 401(a) which benefits either—

(A) 70 percent or more of all employees, or 80 percent or more of all the employees who are eligible to benefit under the plan if 70 percent or more of all the employees are eligible to benefit under the plan, excluding in each case employees who have not satisfied the minimum age and service requirements, if any, prescribed by the plan as a condition of participation, or

(B) such employees as qualify under a classification set up by the employer and found by the Secretary not to be discriminatory in favor of employees who are officers, shareholders, or highly compensated.

is petitioner's position that section 414(b) has no relevance when the corporations within a controlled group have not been established to further a discriminatory scheme favoring the prohibited group. Petitioner cites the following identical provision in two committee reports in support of the contention that the purview of section 414(b) is constrained by a "manipulative purpose" requirement:

The committee, by this provision, intends to make it clear that the coverage and antidiscrimination provisions cannot be avoided by operating through separate corporations instead of separate branches of one corporation. For example, if managerial functions were performed through one corporation employing highly compensated personnel, which has a generous pension plan, and assembly-line functions were performed through one or more other corporations employing lower-paid employees, which have less generous plans or no plans at all, this would generally constitute an impermissible discrimination. [H. Rept. 93–807, 1974–3 C.B. (Supp.) 236, 285; S. Rept. 93–383, 1974–3 C.B. (Supp.) 80, 122.]

Petitioner emphasizes that it operates a business enterprise which is totally independent of Film USA and Film Hawaii and that its only relationship with those corporations involves having a common corporate lineage. Accordingly, petitioner concludes that when the corporations within a controlled group are legitimate entities conducting separate businesses and not merely the result of an unjustifiable separation of employees within a single business, then section 414(b) is inoperative. Petitioner urges that in such a case there has been no attempt to evade the antidiscrimination requirements of sections 401(a) and 410(b)(1) via the interposition of corporate artifices.

It is true that a significant harm perceived by Congress, leading to the enactment of section 414(b), involved the use of separate corporate entities to circumvent the antidiscrimination provisions. Nevertheless, there simply is no statutory authority for conditioning the section's applicability on a requirement of "manipulative purpose." We note that the Senate and House reports quoted above unequivocally state:

The committee bill also provides that in applying the coverage test, as well as the antidiscrimination rules, the vesting requirements, and the limitations on and benefits, employees of all corporations who are members of a "controlled group of corporations" (within the meaning of sec. 1563(a)) are to be treated as if they were employees of the same corporation. Thus, if two or more corporations were members of a parent-subsidiary, brother-sister, or combined controlled group, *all of the employees of all of these corporations*

*would have to be taken into account in applying these tests. * * * [H. Rept. 93–807, supra, 1974–3 C.B. (Supp.) at 285; S. Rept. 93–383, supra, 122. Emphasis added.]*

Thus, both the statute and the legislative history explaining it clearly indicate that all of the employees of a controlled group are to be considered, without limitation, for purposes of sections 401(a) and 410(b)(1). The abuse example contained in the Senate and House reports does not, in the absence of more specific statutory direction, provide adequate justification for conditioning employee aggregation upon a finding of manipulative design. This Court has already required aggregation under section 414(b) for purposes of testing the vesting requirements of a plan established by a 100-percent-owned subsidiary of a corporate parent. *Tamko Asphalt Products, Inc. v. Commissioner*, 71 T.C. 824 (1979). Even though petitioner may not have been availed of for the purpose of circumventing the eligibility requirements of section 410(b)(1), we are not persuaded that we are free to pursue what is essentially a subjective corporate-level inquiry as an overall limitation on the scope of section 414(b), for "a legislature seeking to catch a particular abuse may find it necessary to cast a wider net." *Commissioner v. Pepsi-Cola Niagara Bottling Corp.*, 399 F.2d 390, 392 (2d Cir. 1968), revg. 48 T.C. 75 (1967).

Accordingly, we hold that under section 414(b) all of the employees of petitioner, Film USA, and Film Hawaii must be considered as a single group for purposes of applying the antidiscrimination provisions of section 410(b)(1)(B) to petitioner's plan.

Having concluded that section 414(b) is operative, we shift the focus of our inquiry back to the applicability of section 410(b)(1)(B). Under that provision the plan must benefit "such employees as qualify under a classification set up by the employer and found by the Secretary or his delegate not to be discriminatory in favor of employees who are officers, shareholders, or highly compensated." The determination of whether a plan discriminates in favor of the prohibited group involves a question of fact to be determined from all the surrounding facts and circumstances. *Pulver Roofing Co. v. Commissioner*, 70 T.C. 1001, 1007 (1978). Furthermore, once the Commissioner has determined that a plan's classification is discriminatory, such determination may not be overturned unless it is demonstrated

to be an abuse of discretion, unreasonable or arbitrary. *Loevsky v. Commissioner*, 55 T.C. 1144 (1971), affd. per curiam 471 F.2d 1178 (3d Cir. 1973, cert. denied 412 U.S. 919 (1973); *Ed & Jim Fleitz, Inc. v. Commissioner*, 50 T.C. 384 (1968); cf. *E. F. Higgins & Co. v. Commissioner*, 74 T.C. 1029 (1980) (greater burden of proof *not* applicable to section 401(a)(4) ).[7]

As to this issue, petitioner maintains that the plan's coverage classification, consisting of all employees with the exception of those excluded under the minimum age and service conditions of section 410(a)(1), is a reasonable one that does not discriminate in favor of the prohibited group. Respondent counters that as a result of this classification virtually all of the covered employees were highly compensated and that none of petitioner's employees in the lowest compensation range were covered. Respondent thus concludes that there is substantial justification in the record for his determination that petitioner's plan discriminated in favor of petitioner's highly compensated employees.

As a prelude to a discussion of the respective positions of the parties on this issue, we would observe that there are present three countervailing factors at war with each other which must ultimately be reconciled:

(1) Respondent concedes that petitioner's plan, standing alone, satisfies the percentage limitations of section 410(b)(1)(A) for coverage of petitioner's employees, excluding from coverage as it does only those temporary employees permitted to be excluded under the minimum age and service conditions of section 410(a)(1).

(2) Petitioner, except for its corporate lineage, has never had any business relationship with the other two members of the controlled group.

(3) Petitioner's plan, when all employees of the controlled group are considered, does not meet the so-called "fair cross-section" test of Rev. Rul. 70–200, 1970–1 C.B. 101, although it

---

[7]Some courts have not adopted an "abuse of discretion" standard but instead have held that the Commissioner's determination is to be given a shade more than its usual substantial weight. *Wisconsin Nipple & Fabricating Corp. v. Commissioner*, 581 F.2d 1235 (7th Cir. 1978), affg. 67 T.C. 490 (1976); *Commissioner v. Pepsi-Cola Niagara Bottling Corp.*, 399 F.2d 390 (2d Cir. 1968), revg. 48 T.C. 75 (1967), or that the taxpayer bears a heavy burden in attempting to overturn the Commissioner's determination. *Container Service Co. v. United States*, 478 F.2d 770 (6th Cir. 1973). In any event, it is evident that the taxpayer's burden under sec. 410(b)(1)(B) is greater than merely proving by a preponderance of the evidence that the determination was erroneous.

seems apparent from the record that the plan would pass such test if petitioner's part-time and temporary employees were covered by the plan.

---

In Rev. Rul. 70–200, 70–1 C.B. 101, the Commissioner ruled that a profit-sharing plan met the coverage requirements of the predecessor of section 410(b)(1)(B) where it covered employees in all compensation ranges and those in the middle and lower brackets were covered in more than nominal numbers. Such an approach was a reasonable effort on the part of the Commissioner to bring objectivity to the exercise of the broad discretion vested in him by the statute. Congress manifested its approval of such an approach in the enactment of section 414(b). The committee reports state that—

where the corporation in question [unlike the petitioner before us] contains a *fair cross-section* of high and low-paid employees (compared to the employees of the controlled group as a whole), and where the plan coverage is nondiscriminatory with respect to the employees of the corporation in question, it is anticipated that the Internal Revenue Service would find that the plan met the antidiscrimination tests, even though other corporations in the controlled group had a less favorable retirement plan, or no plan at all. * * * [H. Rept. 93–807, 1974–3 C.B. (Supp.) 285; S. Rept. 93–383, 1974–3 C.B. (Supp.) 122. Emphasis added.]

This Court and others have applied the fair cross-section approach in various coverage situations. See, for example, *Pulver Roofing Co. v. Commissioner*, *supra* at 1013–1014; *John Duguid & Sons, Inc. v. United States*, 278 F. Supp. 101, 104 (N.D. N.Y. 1967).

Section 1.401–1(b)(3), Income Tax Regs., provides, in part, that—

If the plan is so designed as to amount to a subterfuge for the distribution of profits to shareholders, it will not qualify as a plan for the exclusive benefit of employees even though other employees who are not shareholders are also included under the plan. The plan must benefit the employees in general, although it need not provide benefits for all of the employees. Among the employees to be benefited may be persons who are officers and shareholders. However, a plan is not for the exclusive benefit of employees in general if, by any device whatever, it discriminates either in eligibility requirements, contributions, or benefits in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or the highly compensated employees. * * *

We have also held, nevertheless, that "Neither the statute, nor the regulations * * * provide that an employer's plan must satisfy *independently* the fair cross-section test to qualify under section 401(a)." *Federal Land Bank Association of Asheville v. Commissioner*, 74 T.C. 1106, 1114 (1980). (Emphasis added.)

As previously noted, petitioner's plan excludes from coverage only those employees who fail to meet the minimum age and service conditions as provided in section 410(a)(1). While such employees may be excluded in applying the mechanical test for eligibility under section 410(b)(1)(A), section 410(b)(1)(B) is silent on the point. The regulations, however, require that for purposes of the so-called "classification" test of section 410(b)(1)(B) "all active employees (including employees who do not satisfy the minimum age or service requirements of the plan) are taken into account." Sec. 1.410(b)–1(b)(2), Income Tax Regs.

Clearly, without including the employees who do not satisfy the minimum age or service requirements, the participants in petitioner's plan do not represent a fair cross section of all employees of the controlled group.

As an initial matter, for purposes of determining which controlled-group employees are "highly compensated" (interpreting such as a relative term, *Commissioner v. Pepsi-Cola Niagara Bottling Corp.*, *supra*), the appropriate annual salary level of demarcation is $20,000. The conference report submitted by the Assistant Regional Commissioner for the North Atlantic Region stated: "Seven out of the 8 employees who were covered are in the categories which can be classified as highly paid." The eighth covered employee was in the $10,001 to $15,000 salary range.

In terms of analyzing coverage with respect to all of the controlled-group employees, which section 414(b) requires, there is a substantial underrepresentation of lower echelon employees. Of the 138 employees having annual salaries below $20,001, a category which accounted for approximately 85 percent of all controlled-group employees, only one employee was covered by petitioner's plan (0.72 percent).[8] On the other hand, of the 24

---

[8]This assumes all of Film Hawaii's employees earned $20,000 or less. Placing them in the category of $20,001 and above effects a slight percentage increase (0.76 percent).

employees having annual salaries of $20,001 or more, 6 were covered (25 percent).[9] Although a difference in the coverage ratios between prohibited-group employees and nonprohibited-group employees is not determinative (section 1.410(b)–1(d)(2), Income Tax Regs.), the substantial difference here evidences not only a lack of a fair cross section of all controlled-group employees but also a discrimination advantaging petitioner's highly compensated employees. See *Pulver Roofing Co. v. Commissioner, supra;* compare *Federal Land Bank Association of Asheville v. Commissioner, supra.*

The different coverage ratios and ensuing discrimination are highlighted when reference is made to petitioner's plan alone. The plan's eligibility requirements operated to exclude from coverage all of petitioner's six employees in the $5,000 to $10,000 salary range, which comprised 40 percent of petitioner's work force, as well as one of the two employees in the $10,000 to $15,000 salary range. (Petitioner had no employees in the range between $15,001 to $20,000.) By contrast, every employee earning $20,001 or more annually was covered under the plan.

—————

Notwithstanding petitioner's difficulties with the fair cross-section test, there is an appealing argument to be made that petitioner's plan simply does not discriminate: for all intents and purposes, petitioner operates completely independent of Film USA and Film Hawaii and the plan would qualify absent petitioner's membership in the controlled group. Although respondent argues that an exception for corporations which are not "functionally related" would create an "administrative nightmare" because the Revenue Service could never determine whether two or more businesses are functionally related, the fact remains that respondent stipulated petitioner's independence in the instant case.

—————

[9]Again, this assumes that the employees of Film Hawaii fall on the other side of the salary line.

We would also point out that the fair cross-section test may well turn out to be a two-edged sword[10] for the Commissioner. As noted, the regulations not only permit, but require, the inclusion of temporary and part-time employees in the application of the classification test of section 410(b)(1)(B). Petitioner's plan could presumably be qualified by the simple expedient of covering the part-time and temporary employees. See *Babst Services, Inc. v. Commissioner, supra* n. 4 of dissenting opinion of Judge Drennen. Such a prerequisite for qualification, regardless of its lack of logic, would not appear unduly burdensome.

In spite of the foregoing factors, given the fact that petitioner has only one moderately compensated employee eligible to participate in the plan, it is obvious that petitioner's plan as presently constituted can never be said either to cover a representative cross section of all of the employees of the controlled group or to "benefit the employees in general." Sec. 1.401–1(b)(3), Income Tax Regs. Therefore, the plan cannot satisfy the Commissioner's classification test under Sec. 1.410(b)–1(b)(2), Income Tax Regs.

We have held that section 414(b) mandates the treatment of all employees of a controlled group as employed by a single employer. The legislative history of section 414(b) may fairly be read to indicate a congressional intent that this result obtain, even where a corporation has no low paid employees, so that the so-called fair cross-section test could never be satisfied. H. Rept. 93–807, *supra*; S. Rept. 93–383, *supra*. Likewise, this Court has also held that under certain circumstances an employer may be prevented by the operation of the predecessor of section 410(b)(1)(B) and section 401(a)(4) from establishing any plan, despite the harshness of the result, whether attributable to congressional oversight or otherwise. *Loevsky v. Commissioner, supra.*

Consequently, given the standard of review in cases under section 410(b)(1)(B), and in light of the statutory and administrative constraints involved, we must conclude that respondent's determination, that petitioner's plan is not qualified under section 401(a) because it discriminates in favor of highly

---

[10]At least one commentator has demonstrated this possibility. See B. Givner, "Using the Nondiscriminatory Classification Test in Designing Qualified Plans," Taxes—The Tax Magazine 784 (November 1980).

compensated employees, was not an abuse of discretion or arbitrary.

Accordingly,

*Decision will be entered for the respondent.*