SEEKONK LACE COMPANY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Seekonk Lace Co. v. Commissioner
Docket No. 28284-81R.
United States Tax Court
T.C. Memo 1983-127; 1983 Tax Ct. Memo LEXIS 660; 45 T.C.M. (CCH) 951; T.C.M. (RIA) 83127; 4 Employee Benefits Cas. (BNA) 1441; March 10, 1983. Frederick P. McClure and Mark A. Dingley, for the petitioner. Thomas M. Reid, for the respondent. TANNENWALD
MEMORANDUM OPINION TANNENWALD, Chief Judge: Respondent determined that petitioner's pension plan failed to meet the requirements of section 401[1] for plan years ending after December 15, 1976. Petitioner has instituted this declaratory judgment action in accordance with section 7476. [2] We must determine whether petitioner's pension plan meets the coverage requirement of section 410(b)(1). See section 401(a)(3). This case was submitted fully stipulated pursuant to Rule 122. The parties have filed with the Court *663 the administrative record (see Rule 217(b)) which, for purposes of this proceeding, is assumed to be true. Petitioner, Seekonk Lace Company, is a corporation engaged in the production and sale of lace products. Its principal place of business is Pawtucket, Rhode Island. In 1942, petitioner established the Seekonk Lace Company Pension Plan (the plan), a qualified defined benefit pension plan for the benefit of petitioner's salaried and clerical employees. The plan is an adoption of the Massachusetts Life Insurance Company Prototype Fully-Insured Defined Benefit Pension Plan. This prototype plan was approved most recently by the Internal Revenue Service in December 1979. Petitioner operates two lace manufacturing plants. At one plant the hourly-paid employees are unionized; at the other plant the hourly-paid employees are not. In accordance with petitioner's long-established practice, the nonunion, hourly-paid employees receive the same current benefits as those negotiated for by the union employees. Petitioner employs 139 nonunion employees. One hundred seventeen employees are hourly-paid and are excluded from the plan. Thirty-four of these hourly-paid employees performed *664 fewer than 1000 hours of service per year for petitioner. Petitioner's 22 salaried and clerical employees participate in the plan; two of these employees are officers or shareholders of petitioner. The maximum benefit provided by the plan is an annual benefit of $3,000 upon retirement. Twenty participants will receive the maximum benefit. The remaining two participants will receive annual benefits of $2,748 and $2,865. In January 1980, petitioner filed a Short Form Application for Determination for Employee Benefit Plan requesting a determination that its plan qualified under Section 401(a). In connection with its request, petitioner submitted the following information concerning its employees: Number of
hourly-paid
Annual
Total number
employees
Number of participating
Compensation
of employees [1]
ineligible to
participate
employees
$ 0 to 4,999
[2] 34
34
0
5,000 to 9,999
55
53
2
10,000 to 14,999
36
30
6
15,000 to 19,999
5
0
5
20,000 to 24,999
6
0
6
25,000 to 29,999
2
0
[3] 2
30,000 and over
1
0
[3] 1
*665 On August 31, 1981, respondent issued an adverse determination letter for plan years ending after December 15, 1976. Section 401(a)(3) provides that a qualified plan must satisfy the requirements of section 410. Section 410(b)(1) requires that a plan either satisfy certain safe-harbor percentage tests or benefit "such employees as qualify under a classification set up by the employer and found by the Secretary * * * not to be discriminatory in favor of employees who are officers, shareholders, or highly compensated." The parties agree that the safe-harbor tests of section 410(b)(1)(A) have not been met. Accordingly, the issue before us is whether petitioner's plan, which covers only salaried and clerical employees, discriminates in favor of the prohibited group, i.e., shareholders, officers, or highly compensated employees. Resolution of this issue is a question of fact to be determined from all the surrounding facts and circumstances. Fujinon Optical, Inc. v. Commissioner,76 T.C. 499, 506 (1981). In the first instance, this determination must be made by the Commissioner *666 and we will not overturn his determination unless it is arbitrary, unreasonable, or an abuse of discretion. Fujinon Optical, Inc. v. Commissioner,supra at 506-507. [3]
In assessing whether petitioner's classification discriminates in favor of the prohibited group, we must (1) define the prohibited group and (2) determine whether any of petitioner's employees may be excluded from consideration in applying the coverage requirement. Respondent has determined that all employees earning $20,000 or more are highly compensated. For purposes of our analysis, we will accept respondent's dividing line since we do not find it to be arbitrary. See Sutherland v. Commissioner,78 T.C. 395, 409 n. 12 (1982). In fact, petitioner does not contend that a different dividing line *667 would be more appropriate. In determining whether the coverage requirement of the statute is met, we exclude petitioner's union employees from consideration. Section 410(b)(2)(A). [4] Petitioner argues that its 34 employees with less than 1,000 hours of service (part-time employees) should also be excluded because they failed to meet the minimum service requirements for participation in the plan. While respondent apparently accepted petitioner's position for purposes of the determination letter, in his "Brief in Answer" [5] respondent argues that part-time employees must be considered in determining whether a classification is discriminatory. In its reply brief, petitioner argues that respondent should be estopped from changing his position at this late date and that, if part-time employees are to be considered, their annual compensation should be computed as if they worked full-time. [6] We agree with respondent that petitioner's part-time employees are properly taken into account in determining whether a classification is discriminatory. Section 1.410(b)-1(b)(2), Income Tax Regs. *668 However, we need not address petitioner's contention that the wages of its part-time employees should be computed as if they worked full-time. Even if we exclude from consideration petitioner's part-time employees, we conclude that respondent did not act arbitrarily in determining that the plan was not qualified. Therefore, our analysis, consistent with that used by respondent in his determination letter, will consider only petitioner's full-time employees. Moreover, we note that "[t]he doctrine of equitable estoppel is not a bar to the correction by the Commissioner of a mistake of law." Automobile Club v. Commissioner,353 U.S. 180, 183-184 (1957). *669 Respondent's position is that petitioner's plan is not qualified because it does not benefit employees in general but rather discriminates in favor of the prohibited group. Various guidelines have been suggested by the courts, the regulations, and the Congressional Committee reports in determining whether a classification is discriminatory. Sutherland v. Commissioner,supra at 409. The regulations provide that, when assessing all the facts and circumstances, there is to be allowed -- a reasonable difference between the ratio of such employees [i.e., employees who are officers, shareholders, or highly compensated] benefited by the plan to all such employees of the employer and the ratio of the employees (other than officers, shareholders, or highly compensated) of the employer benefited by the plan to all employees (other than officers, shareholders, or highly compensated). [Section 1.410(b) - 1(d)(2), Income Tax Regs.] Focusing on this guideline, we find that 100 percent of employees in the prohibited group are covered by the plan while only 13.5 percent of *670 the remaining employees are eligible to participate. We do not believe that this constitutes a "reasonable difference." See Pulver Roofing Co. v. Commissioner,70 T.C. 1001, 1010 (1978). Respondent also relies on the fact that the plan fails to cover a fair cross-section of petitioner's employees because the classification results in substantial underrepresentation of lower-paid employees. Although we agree with petitioner that a plan's mere failure to satisfy the "fair cross-section test" may not be fatal, Sutherland v. Commissioner,supra at 410-411, the test is nevertheless valid in determining whether under all the facts and circumstances a classification is discriminatory, Federal Land Bank Assn. of Asheville v. Commissioner,74 T.C. 1106, 1113 (1980). In the instant case, while 52.4 percent of petitioner's employees fall within the lowest compensation range, [7] only 9.1 percent of the plan participants were included in this category. The two lowest compensation ranges account for 86.7 percent of all employees but only 36.4 *671 percent of plan participants. On the other hand, employees who fall within the prohibited group represent only 8.6 percent of petitioner's work force but 40.9 percent of the plan participants. We believe the substantial difference in these coverage ratios evidences a discrimination in favor of the prohibited group. See Fujinon Optical, Inc. v. Commissioner,supra at 509-510. [8]
Petitioner argues that its plan is not *672 discriminatory because: (1) petitioner provides its nonunion, hourly-paid employees with the same benefits as bargained for by its union employees; (2) the plan covers employees in all compensation ranges and the majority of participants in the plan are not members of the prohibited group; (3) the low benefits provided by the plan and its long existence evidence petitioner's lack of intent to discriminate. In respect of the first argument, petitioner's reasoning apparently is as follows: (1) pursuant to section 410(b)(2)(A), union employees are excluded from consideration in determining whether a classification is discriminatory if there is evidence that retirement benefits were the subject of good-faith bargaining between the union and the employer; (2) the same benefits bargained for by petitioner's union employees are provided to its nonunion, hourly-paid employees; (3) therefore, petitioner's nonunion, hourly-paid employees also should be excluded in determining whether the classification is discriminatory. Were we to adopt petitioner's position, the classification would not be discriminatory, because 100 percent of the relevant employees would be covered by the plan. We need *673 not address the soundness of petitioner's argument, because the record does not support the premise that petitioner's nonunion, hourly-paid employees receive the same benefit package as that bargained for by the union employees. Although not entirely clear, based on reasonable inferences drawn from the record, it appears that, while the union employees are covered by a pension plan to which petitioner makes contributions, the nonunion, hourly-paid employees are not. In respect of the second argument, as petitioner correctly points out, 13 of the 22 plan participants are not members of the prohibited group and employees in all compensation ranges are covered by the plan. However, we do not believe that these factors are sufficient to carry petitioner's burden of proof (see Rule 217(c)) in light of the countervailing indications (discussed at pp. 8-10, supra) that the plan discriminates in favor of the prohibited group. We do not believe that a classification which includes 100 percent of the prohibited group and excludes the vast majority of petitioner's lower-paid employees satisfies the coverage requirement of the statute merely because the majority of participants are not *674 members of the prohibited group. In this connection, we note that the regulations provide that-- [a] showing that a specified percentage of employees covered by a plan are not officers, shareholders, or highly compensated, is not in itself sufficient to establish that the plan does not discriminate in favor of employees who are officers, shareholders, or highly compensated." [Section 1.410(b)-1(d)(2), Income Tax Regs.[9]] *675 Lastly, petitioner argues that the low retirement benefits provided by the plan ($3,000 per year) and the fact that petitioner has had a retirement plan for salaried and clerical employees since 1942 indicate that the plan was not established for the purpose of discriminating in favor of members of the prohibited group. The issue, however, is whether the plan in fact discriminated in favor of members of the prohibited group. See Pulver Roofing Co. v. Commissioner,70 T.C. at 1010 ("[T]he absence of any evidence of an intent to siphon off profits to the prohibited group is not determinative"). Furthermore, while petitioner's classification may not have been discriminatory in the past, a plan will not qualify if changing circumstances cause the classification to become discriminatory. See, e.g., Pulver Roofing Co. v. Commissioner,supra.
In sum, after carefully considering the arguments put forth by petitioner, we are unable to conclude that respondent's determination that the plan discriminated in favor of members of the prohibited group *676 was arbitrary, unreasonable, or an abuse of discretion. Decision will be entered for respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. The jurisdictional requirements of section 7476(b)↩ have been met.
1. These figures do not include petitioner's 218 union employees. See sections 401(a)(4) and 410(b)(2)(A)↩. 2. These employees performed fewer than 1,000 hours of service for petitioner. ↩
3. One employee in each compensation range is an officer or shareholder.↩
3. Section 401(a)(5) expressly states that a "classification shall not be considered discriminatory * * * merely because it is limited to salaried or clerical employees." This provision, however, merely means that a salaried and clerical classification will not be considered discriminatory per se. Babst Services, Inc. v. Commissioner,67 T.C. 131, 138↩ (1976).
4. Apparently, respondent has concluded that "retirement benefits were the subject of good faith bargaining" between the union and petitioner, within the meaning of section 410(b)(2)(A), since he does not contend otherwise. This section has been renumbered and is now section 410(b)(3)(A)↩. 5. The parties filed seriatim briefs. ↩
6. Petitioner argues that a part-time employee earning $15 per hour is more highly compensated than a full-time employee earning $5 per hour.↩
7. The lowest compensation range is $5,000 to $9,999. The 34 part-time employees earning less than $5,000 annually have not been taken into consideration (see pp. 6-8, supra↩). 8. One of the criteria suggested by the Committee reports in determining whether a plan covers a fair cross-section of employees of a controlled group is whether "the average compensation of covered employees was substantially higher * * * than the average compensation of noncovered employees * * *." H. Rept. 93-807, 1974-3 C.B. Supp. 236, 285. See Sutherland v. Commissioner,78 T.C. 395, 410↩ n. 14 (1982). We note that the average salary of employees covered by petitioner's plan was almost double that of noncovered employees.
9. Petitioner places much reliance on Rev. Rul. 66-12, 1966-1 C.B. 72, wherein respondent ruled that a plan which covered 26 salaried employees and excluded 83 hourly-paid employees was nondiscriminatory. We agree with respondent that in the present case it cannot be said, as was the case in Rev. Rul. 66-12↩, that the "compensation of each of the [employees who is not a member of the prohibited group] is substantially the same as that of the excluded hourly-paid employees." For example, five of the participants who are not members of the prohibited group earn between $15,000 and $19,999 annually; no excluded hourly-paid employee falls within this compensation range.